## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Harrisonburg Division

| | |
|---|---|
| THOMAS D. DOMONOSKE, individually and on behalf of all those similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>BANK OF AMERICA, N.A., a national banking association,<br><br>    Defendant. | Civil Action No. 5:08-cv-00066 |
| VICTOR RIVERA, individually and on behalf of all those similarly situated,<br><br>    Plaintiff,<br>  v.<br><br>BANK OF AMERICA, N.A., a national banking association,<br><br>    Defendant. | Civil Action No. 5:09-cv-00080 |

### BANK OF AMERICA, N.A.'S SUPPLEMENTAL SUBMISSION REGARDING THE TIMING OF CREDIT SCORE DISCLOSURES TO PLAINTIFFS

Pursuant to the Court's Order on December 9, 2009 ("Order," Docket # 82)[1], Bank of America, N.A. ("Bank" or "Bank of America") hereby submits the following Supplemental Submission regarding the Timing of Credit Score Disclosures to Plaintiffs, in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, filed September 30, 2009 (Docket # 68), and Bank of America's Joinder in Support of Plaintiffs' Motion, filed October 30, 2009 (Docket # 75).

---

[1] Docket references refer to the *Domonoske* action, unless otherwise stated.

## I.      BACKGROUND

Following the hearing on November 18, 2009, regarding the parties' request for preliminary approval of the class action settlement of the above-captioned and consolidated actions,[2] the Court requested a supplemental memorandum regarding the timing of the credit score disclosures provided to named plaintiffs Domonoske and Rivera.  (Order at 2, ¶ 1.)

## II.      THE CREDIT SCORE DISCLOSURE TO THOMAS DOMONOSKE

Mr. Domonoske first applied for an increase to his existing home equity line of credit ("HELOC") on October 4, 2007.  That transaction was at least arguably outside of the parameters of the Fair Credit Reporting Act's ("FCRA") credit score disclosure requirement, which, in relevant part, applies to applications for "the establishment of an open end loan," rather than applications to expand pre-existing open-end loans.  15 U.S.C. § 1681g(g).  Likely for that reason, Mr. Domonoske's arguments about the timeliness of his disclosure run from his subsequent application for a new HELOC from the Bank on November 2, 2007.  That transaction took an unusually long time to close.  Consistent with the protocol in place at the time, Mr. Domonoske's credit score disclosure was triggered for mailing at the time of his closing on December 12, 2007.  A rare processing glitch then postponed the actual mailing of the disclosure until December 18, 2007.

Mr. Domonoske entered a Harrisonburg branch of Bank of America on October 4, 2007, to request an increase to his existing HELOC.  (Declaration of Michael J. Agoglia in Support of Supplemental Submission Regarding the Timing of Credit Score Disclosures to Plaintiffs ("Agoglia Decl."), Exhibit 1 (Thomas Domonoske Deposition ("Domonske Dep.")), 136:22-

---

[2] *Domonoske v. Bank of America, N.A.* ("*Domonoske*") and *Rivera v. Bank of America, N.A.* ("*Rivera*").

137:15.)  Immediately after contacting Bank of America about increasing his home equity line, Mr. Domonoske purchased his credit score from Experian — one of the three major credit bureaus — for $6, and engaged counsel to advise him about the Bank's credit score disclosure obligations under the FCRA.  On October 5, 2007, Experian provided Mr. Domonoske with a copy of his credit report and credit score.[3]  According to Mr. Domonoske, in the course of numerous calls he thereafter made to the Bank, he came to understand that it was the Bank's practice at the time to provide his written credit score disclosure either at or after the closing of the loan transaction.  (*Id*. at 323:13-324:14.)[4]  In late October 2007, during one of Mr. Domonoske's telephone conversations with Bank of America representatives, Mr. Domonoske was informed of his FICO score that the Bank was using to process his application.[5]  (*Id*. at 337:4-339:3.)

On November 2, 2007, after his request for a line increase had been processed and was nearly ready for closing, Mr. Domonoske decided to apply for a new home equity line (*id*. at

_____

[3]  Experian provided its proprietary VantageScore, which Mr. Domonoske was able to convert to the equivalent number under Fair Isaac's model, known popularly as FICO.  For privacy reasons, and so as to expeditiously file this submission without the need for filing under seal, Bank of America has chosen not to provide Mr. Domonoske's credit report and score.  Exhibits with such information have been appropriately redacted so as to remove identifying and private information.  Bank of America is happy to provide the credit report and score, or any other information, should the Court deem it necessary to its review of this submission.

[4]  The Bank does not dispute that, at the time, the credit score disclosure for HELOC transactions such as Mr. Domonoske's was triggered at closing, which meant that the data file necessary to prepare the disclosure was created electronically and sent automatically to the internal mail vendor, who ordinarily would drop the printed disclosure in the mail within two days.

[5]  The FICO score communicated to Mr. Domonoske is precisely the same credit score that Bank of America later disclosed in writing to Mr. Domonoske by letter dated December 12, 2007.  (Domonsoke Dep. at 345:18-346:12 & Ex. 1.)  Moreover, as Mr. Domonoske himself computed, the FICO score was numerically equivalent to the Experian VantageScore he obtained on October 5, 2007.  (*Id*. at 342:8-343:22.)

147:16-147:22), which called for the start of a new application (*id*. at 148:12-13, 18-19).  In the ordinary course, an application for a home equity line under $500,000, such as Mr. Domonoske's, required only an automatic, computerized valuation.  But, starting with his October 4 application and continuing after his November 2 application, Mr. Domonoske requested multiple re-evaluations, which the Bank undertook, including time-consuming "drive-by" and "walk-through" appraisals, consideration of comparable residential values, and subsequent assessments and reconsiderations.  Each of these valuations required additional time (and was done at the Bank's expense).[6]

---

[6] More specifically:

- October 5, 2007:  Upon receipt of Mr. Domonoske's line increase application, Bank of America ran an automatic appraisal, which valued Mr. Domonoske's residence at $215,000.  Mr. Domonoske disputed the value, and the Bank conducted a second automatic appraisal, and, later that day, obtained a new valuation ($205,000).

- October 9, 2007:  Mr. Domonoske was advised that the subsequent appraisal of his home resulted in a lower valuation than the original appraisal.  Per Mr. Domonoske's request, the Bank scheduled another appraisal, a walk-through evaluation of Mr. Domonoske's residence.

- October 15, 2007:  Mr. Domonoske telephoned the Bank and indicated that he remained dissatisfied with the appraisal results.  He requested a copy of his appraisals, and the Bank placed his application on hold so that he would have time to receive the documents and respond.

- October 20, 2007:  Mr. Domonoske sent a letter to the Bank requesting reconsideration of the walk-through appraisal.

- October 24, 2007:  A Bank associate telephoned Mr. Domonoske, and advised him that his loan was approved.  Mr. Domonoske indicated that he still disputed the appraisals and wanted the Bank to reconsider the valuation.

- October 29, 2007:  A Bank associate telephoned Mr. Domonoske and advised him that the comparables he submitted as part of a reconsideration of his property appraisal were received, but were incomplete.

(Footnote continues on next page.)

Mr. Domonoske's HELOC transaction ultimately closed on Wednesday, December 12, 2007.  Per the Bank's then-existing protocol, his credit score disclosure was automatically triggered for processing the same day as his closing.  (Agoglia Decl. Ex. 2 (Marty Smith Deposition ("Smith Dep.")), 174:25-175:7.)  Approximately 99% of the time, it takes two days to drop the disclosure letter in the mail once triggered (in Mr. Domonoske's transaction, that would

---

(Footnote continued from previous page.)

- November 2, 2007:  Mr. Domonoske withdrew his application for a credit line increase and submitted the application for a new HELOC, which began the application process anew.  (Agoglia Decl. Ex. 1 (Domonoske Dep.), 145:7-146:16.)  A credit bureau fraud alert issued, which delayed the application until a Bank associate could manually review it.

- November 5, 2007:  Although the Bank was ready to close, Mr. Domonoske continued to dispute the property appraisal.  Accordingly, the Bank awaited Mr. Domonoske's submission of additional information on comparable properties.

- November 6, 2007:  Mr. Domonoske provided information about three properties he maintained were comparable.  The Bank passed the information on to the vendor responsible for appraisals.

- November 9, 2007:  The appraisal vendor notified the Bank that the information submitted by Mr. Domonoske was incomplete and did not change the appraised value.

- November 19–December 7, 2007:  The Bank conferred with the appraisal vendor regarding use of comparables submitted by Mr. Domonoske.  On December 7, 2007, an updated appraisal valued Mr. Domonoske's residence at $270,000.

- December 7, 2007:  The Bank was again ready to close the loan.

- December 10, 2007:  Mr. Domonoske requested an increase of the loan amount.  (*Id*.)  That same day, the increased loan amount was approved, and the Bank left a voicemail for Mr. Domonoske advising him so.  At Mr. Domonoske's request, the closing was put off a day or so, so that Mr. Domonoske could shop the loan around with other banks and thoroughly review all of the loan papers prior to closing.  (*Id*. at 159:3-160:17.)

So as to avoid exponentially expanding the volume of this submission, Bank of America is not including citation to or attachment of all supporting material, but would immediately do so if the Court requested.

- 5 -

have been Friday, December 14).  Unfortunately, there was a glitch with Mr. Domonoske's envelope, due to either a faulty bar code or other printing error, which caused it to be rejected by the automated mail processing system.  (*Id*. at 222:20-223:7, 223:22-224:2.)  As a result, his disclosure was sent overnight to a third-party vendor for special processing.  (*Id*. at 223:3-7.)  With the intervening weekend, this meant Mr. Domonoske's disclosure was processed for mailing the following Monday, December 17, and mailed Tuesday, December 18, 2007.  (*Id*. at 225:23-226:16.)

### III.    THE CREDIT SCORE DISCLOSURE TO VICTOR RIVERA

Mr. Rivera used a mortgage broker to arrange his home loan transaction with the Bank. On April 18, 2006, Mr. Rivera's application was received by the Bank from his broker.  His loan closed on May 2, 2006.  (*Rivera* Docket # 19 at ¶ 1.)  Mr. Rivera claims that, prior to this litigation, he never received any credit score disclosure relating to his underlying mortgage transaction.  (*Rivera* Docket # 18 at ¶ 1.)  The Bank and his broker contend that Mr. Rivera was provided with successive credit score disclosures.  The first of these was provided by his broker; the second was provided by Bank of America through a third-party vendor.

Mr. Rivera's mortgage broker was Joel F. Pou.  (Agoglia Decl. Ex. 3 (Declaration of Joel Pou ("Pou Decl.")).[7])  Mr. Pou met with Mr. Rivera on April, 7, 2006 to have him sign loan applications and other documents.  (*Id.* at ¶ 4, Exs. A-D.)  Mr. Pou testified that, consistent with his customary practice, he also provided Mr. Rivera with the FCRA-prescribed written credit score disclosure at the onset of the application process.  (*Id.* at ¶ 5, Ex. F.)  Mr. Pou produced a copy of that disclosure, which was attached to his declaration.  (*Id.*)

---

[7] As the parties have previously addressed before the Eastern District of Virginia, in the underlying *Rivera* action, the issue of whether and when Mr. Rivera received his credit score disclosure, Bank of America herein references declarations and exhibits filed on December 5,

(Footnote continues on next page.)

The Bank contends that it also provided Mr. Rivera with a credit score disclosure in addition to the one earlier provided by his broker.  Bank of America received Mr. Rivera's loan on Tuesday, April 18, 2006.  Consistent with the protocol at the time, on the following Thursday, the origination system performed an electronic sweep of applications pending at least seven days on its system.  (*See* Agoglia Decl. Ex. 2 ( Smith Dep.), 139:9-20.)  The Bank's records confirmed that it compiled the necessary data and sent it overnight to a third-party vendor engaged by Bank of America to print and mail the disclosures.  (*Id*.; Agoglia Decl. Ex. 4 (Declaration of Marty Smith), ¶ 2.)  Although the actual disclosures were not individually retained, consistent with the vendor's regularly audited protocol at the time, Mr. Rivera's disclosure would have been mailed within three business days of receiving the request on April 28, 2006, or by May 3, 2006.  (Agoglia Decl. Ex. 5 (Declaration of Susan Engel), ¶ 3.)

## CONCLUSION

Per the Court's Order, the above submission presents the timing of the credit score disclosures provided to plaintiffs Domonoske and Rivera.  Bank of America would be glad to address any additional questions the Court may have about this or other issues bearing on the request for preliminary approval of the settlement.

---

(Footnote continued from previous page.)

2008, with its Supplemental Submission in Support of Defendant Bank of America, N.A.'s Motion to Dismiss.  (*See Rivera* Docket # 33.)

December 18, 2009                                    Respectfully Submitted,

                                                     MORRISON & FOERSTER LLP

                                                     By:__s/ Michael J. Agoglia_____

                                                              John A. Trocki III
                                                              Virginia Bar Number: 38656
                                                              MORRISON & FOERSTER LLP
                                                              1650 Tysons Boulevard, Suite 400
                                                              McLean, VA 21102
                                                              Telephone: (703) 760-7112
                                                              Facsimile: (703) 760-7777
                                                              Email: jtrocki@mofo.com

                                                              Michael J. Agoglia
                                                              Alexandria A. Amezcua
                                                              MORRISON & FOERSTER LLP
                                                              425 Market Street
                                                              San Francisco, CA 94105
                                                              Telephone: (415) 268-7000
                                                              Facsimile: (415) 268-7522

                                                              R. Grant Decker
                                                              Virginia Bar No. 20618
                                                              J. Douglas Cuthbertson
                                                              Virginia Bar No. 41378
                                                              MILES & STOCKBRIDGE P.C.
                                                              1751 Pinnacle Drive, Suite 500
                                                              McLean, VA 22102
                                                              Telephone: (703) 903-9000
                                                              Facsimile: (703) 610-8686
                                                              Email:  gdecker@milesstockbridge.com
                                                              Email: jcuthber@milesstockbridge.com

                                                     Attorneys for Defendant
                                                     Bank of America, N.A.

**Certificate of Service**

      I hereby certify that on December 18, 2009, I electronically filed the foregoing **BANK OF AMERICA, N.A.'S SUPPLEMENTAL SUBMISSION REGARDING THE TIMING OF CREDIT SCORE DISCLOSURES TO PLAINTIFFS** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Timothy E. Cupp, Esq.
Cupp & Cupp, P.C.
1951 Evelyn Byrd Avenue, Suite D
P.O. Box 589
Harrisonburg, VA  22801

Matthew J. Erausquin, Esq.
Consumer Litigation Associates, P.C.
3615-H Chain Bridge Road
Fairfax, VA  22030

Ian B. Lyngklip, Esq.
24500 Northwestern Highway, Ste. 206
Southfield, MI  48075

Leonard A. Bennett, Esq.
Consumer Litigation Associates, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, VA  23606

                                  s/ Alexandria A. Amezcua
                                  Alexandria A. Amezcua
                                  California Bar No. 247507
                                  Attorney for Defendant
                                  MORRISON & FOERSTER LLP
                                  425 Market Street
                                  San Francisco, CA  94105
                                  Telephone:  (415) 268-7000
                                  Facsimile:  (415) 268-7522
                                  AAmezcua@mofo.com