**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division**

| | |
|---|---|
| THOMAS D. DOMONOSKE, individually and on behalf of all those similarly situated, | |
| Plaintiff, | Civil Action No. 5:08-cv-00066 |
| v. | |
| BANK OF AMERICA, N.A., | |
| Defendant. | |
| VICTOR RIVERA, individually and on behalf of all those similarly situated, | |
| Plaintiff, | Civil Action No. 5:09-cv-00080 |
| v. | |
| BANK OF AMERICA, N.A., | |
| Defendant. | |

**BANK OF AMERICA, N.A.'S OBJECTION TO REPORT AND RECOMMENDATION
REGARDING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Pursuant to Fed. R. Civ. P. 72(b), defendant Bank of America, N.A. ("Bank" or "Bank of America") hereby submits the following Objection to United States Magistrate Judge Urbanski's Report and Recommendation regarding Preliminary Approval of the Class Action Settlement ("Report") (Docket No. 89).

## INTRODUCTION

Judge Urbanski's Report recommends that the Court preliminarily approve the proposed settlement, save for three aspects:

1. The named plaintiffs' incentive award of $5,000 each;

2. The attorneys' fees to be requested by plaintiffs' counsel; and

3. The authority to enter the proposed "Injunction and Consent Order."

(Report at 2.)  This brief addresses primarily the third of these items.

The Report's sole objection to the Consent Order revolved around the finding that injunctive relief was unavailable here.  The Bank agrees with Judge Urbanski's careful analysis of the availability of true injunctive relief under the Fair Credit Reporting Act ("FCRA").  And the Bank understands how the lack of further guidance from the parties, and the very title of the proposed order — "Injunction and Consent Order" — led Judge Urbanski to investigate *sua sponte* the question of whether Congress permitted private litigants to seek injunctive relief.  In fact, though, the proposed order is functionally a consent decree.  But for the parties' inaccurate use of the term "Injunction" in its title, the Report recognizes that the proposed Consent Order is part of an agreement over which the Court is asked to retain jurisdiction as an enforceable order.  That is the very definition of a consent decree, and, under settled Supreme Court precedent, consent decrees are fully enforceable, even where they provide relief unavailable in the underlying statute which formed the basis for the lawsuit.  The Bank has consulted with plaintiffs, who represent that they agree with the position that a consent decree is fully enforceable irrespective of whether the statutory basis for the relief affords that remedy.

The Bank fully understands that it will have the burden of persuading the Court ultimately that the contents of the Consent Order are consistent with the FCRA's credit score

disclosure provisions.  For pragmatic reasons (*e.g.*, the settlement may be voided if more than 5% of the class opts out), such determinations are left in the ordinary course, and as contemplated by the parties here, to the final approval proceeding.  But, while the Bank is not asking the Court to approve the contents of the Consent Order at this stage, the Bank does need to know now whether the Court agrees that it has the general authority to enter the Consent Order, so long as that Order is stripped of its reference to an "injunction."  The Consent Order achieves a fundamental benefit of the settlement for the Bank in eliminating uncertainty with respect to the Bank's current credit score disclosure practices.  In fact, this issue was so important to the Bank that it obtained the right unilaterally to void the Settlement Agreement if relief substantially conforming to the proposed Consent Order was not entered.  If the Court believes that it still lacks authority to enter the Consent Order, the Bank would ask for such a ruling now, before class notice is sent and additional judicial resources are consumed in connection with preparation for final approval proceedings.

## BACKGROUND

Bank of America submits that the Report contains an especially thorough and accurate summary of the course of the litigation, the nature of the claims, and the evidence (or lack thereof) that likely would be offered at trial.

## ARGUMENT

### I.    THIS COURT HAS THE AUTHORITY TO ENTER THE CONSENT ORDER.

The limitation on injunctive relief under the FCRA does not foreclose the Court's authority to enter the requested consent decree in this case.  First, the request is truly one for a consent decree, not injunctive relief.  Second, the Court has the power to enter consent decrees that go beyond the relief it could provide after a trial on the merits.

Though the two are often conflated, a consent decree is different from an injunction entered after litigation on the merits.

> To be sure, consent decrees bear some of the earmarks of judgments entered after litigation. At the same time, because their terms are arrived at through mutual agreement of the parties, consent decrees also closely resemble contracts. More accurately, then, as we have previously recognized, consent decrees have attributes both of contracts and of judicial decrees, a dual character that has resulted in different treatment for different purposes.

*Local Number 93 v. City of Cleveland*, 478 U.S. 501, 519 (1986) (citations and internal citations omitted). *See also Swift & Co. v. United States*, 276 U.S. 311, 327 (1928) (stating further differences between an injunction and a consent decree); *Smyth v. Rivero*, 282 F.3d 268, 280 (4th Cir. 2002) (noting that consent decrees, "hybrids" between contracts and judicial decrees, may have injunctive provisions). Unlike an injunction entered as relief for a plaintiff, "the voluntary nature of a consent decree is its most fundamental characteristic." *Local Number 93* at 521-22; *United States v. Armour & Co.*, 402 U.S. 673, 681-82 (1971) ("Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation."); *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 236 n.10 ("[Consent decrees] are arrived at by negotiation between the parties and often admit no violation of law[;] they are motivated by threatened or pending litigation and must be approved by the court[.]").

The Supreme Court has clarified that the authority of a court to enter a consent order does not derive from relief provided by the underlying statute, but, rather, the parties' agreement.

> Indeed, it is the parties' agreement that serves as the source of the court's authority to enter any judgment at all. More importantly, it is the agreement of the parties, rather than the force of the law upon which the complaint was originally based, that creates the obligations embodied in a consent decree.

*Local Number 93* at 522 (internal citations omitted); *Dunn v. Carey*, 808 F.2d 555, 559 (7th Cir. 1986) ("Consent decrees are contracts. Their force comes from the agreement of the parties, not from the statute on which the complaint was based.").

Consequently, the United States Supreme Court has held that a court may enter a consent

- 3 -

decree that goes beyond the relief it could have provided after a trial on the merits.  In *Local Number 93*, the Supreme Court considered whether Title VII of the Civil Rights Act precluded the entry of a consent decree that provided relief to firefighters who may not have been actual victims of the City's alleged discriminatory practices.  478 U.S. at 504.  In relevant part, Title VII stated that "*[no] order of the court shall require* the admission or reinstatement of an individual . . . if such individual was refused admission . . . or was refused employment . . . for any reason other than discrimination on account of race[.]"  *Id*. at 514 (citing 42 U.S.C. § 2000e-5(g)) (emphasis in opinion).  Local Number 93 intervened at the district court and later appealed entry of the consent decree to the Sixth Circuit.  The Sixth Circuit upheld the consent decree, reasoning that, "even if . . . Title VII limits relief to those who have been actual victims of discrimination, the fact that this case involves a consent decree and not an injunction" puts this case on a different footing from those denying injunctive relief under Title VII.  *Id*. at 513.  The Supreme Court affirmed:

> Whatever the limitations Congress placed in [Title VII] on the power of federal courts to impose obligations . . . to remedy violations of [the statute], ***these simply do not apply when the obligations are created by a consent decree***.

*Id*. at 522-23 (emphasis added).

Relying on *Local Number 93*, the Eighth Circuit came to a similar determination in *Angela R. v. Clinton*, 999 F.2d 320 (8th Cir. 1993).  In *Angela R.*, the plaintiffs brought suit against the Arkansas Department of Human Services ("DHS"), in part, for violation of certain provisions of the Adoption Assistance and Child Welfare Act ("Adoption Assistance Act").  *Id*. at 322.  The parties submitted a proposed consent order, calling for various procedural changes to DHS.  *Id*. at 323.  After the parties' submission, and before the fairness hearing, the Supreme Court issued an opinion holding that the Adoption Assistance Act did not create a private right of action enforceable under § 1983, a claim asserted by plaintiffs, and upon which the consent order partly relied.  *Id*.  The district court relied on *Local Number 93* to hold that the consent decree could afford broader relief than the court could have awarded after trial.  *Id*.  The Eighth Circuit

affirmed, recognizing that there may no longer be a private right of action, "[b]ut these questions go to the merits of plaintiffs' claims, not to the district court's jurisdiction . . . to approve the proposed settlement and to enter a consent decree resolving the claims." *Id*. at 324; *see also*, *Curiale v. Lenox Grp., Inc.*, Civ. No. 07-1432, 2008 U.S. Dist. LEXIS 92851, at *23-24 (Nov. 14, 2008) (approving FCRA settlement that included entry of consent order, despite statutory amendment that removed an individual's private right of action) ("[I]t is of no consequence that FACTA, as amended, no longer recognizes the claims underlying Plaintiff's Complaint. The Settlement Agreement is a contract that exists independently from the Complaint.").

Finally, entry of the Consent Order as part of the settlement of these FCRA claims would by no means be precedent-setting. *See*, *e.g.*, *Klingensmith v. Max & Erma's Rests., Inc.*, Civ. No. 07-0318, 2007 U.S. Dist. LEXIS 81029, at *4-5, *21 (W.D. Penn. Oct. 23, 2007) (approving entry of consent decree as part of settlement of FCRA claims); *Washington v. CSC Credit Servs., Inc.*, Civ. No. 97-0971, 1999 U.S. Dist. LEXIS 3542, at *1, *3 (E.D. La. Mar. 10, 1999), and *Washington v. CSC Credit Servs., Inc.*, Civ. No. 97-0971, 1999 U.S. Dist. LEXIS 3543, at *1-2 (E.D. La. Mar. 10, 1999) (ordering entry of consent decree as part of settlement of FCRA claims); *Palamara v. Kings Family Rests.*, Civ. No. 07-317, 2008 U.S. Dist. LEXIS 33087, at *3-4 (W.D. Penn. Apr. 22, 2008) (approving entry of consent decree as part of settlement of FCRA claims); *Curiale*, 2008 U.S. Dist. LEXIS 92851, at *4, *27-28 (same).

The Bank has consulted with plaintiffs, and the parties are in agreement with this analysis of the Court's authority to enter a consent order, and further agree that the proposed Consent Order should be stripped of its unfortunate and mistaken reference to the word "Injunction" in the title. The Bank fully understands that it will ultimately have to persuade the Court at final approval that the contents of the proposed Consent Order are in fact consistent with the FCRA's credit score disclosure provisions. The Bank asks that the Court find for purposes of preliminary approval that it does have the general authority to enter the proposed Consent Order as a consent decree.

## II. THE REPORT'S FINDINGS REGARDING PLAINTIFFS' INCENTIVE AWARDS AND REQUESTS FOR FEES AND COSTS ARE NOT IMPEDIMENTS TO PRELIMINARY APPROVAL.

Under the terms of the Settlement Agreement ("Agreement"), Bank of America agreed not to object to plaintiffs' requests for incentive awards or fees and costs so long as they fell within defined limits. (*See* Settlement Agreement at ¶ 8.) As such, the Bank cannot comment on the Report's substantive analysis of these two issues. As a point of procedure, however, Bank of America notes that whatever decision the Court makes on incentive awards or the award of plaintiffs' fees and costs should not prevent preliminary approval. Under both the Agreement and governing law, those decisions are clearly committed to this Court's discretion. Because the Agreement properly leaves to the Court the determinations about both incentive awards and plaintiffs' fees and costs, even if the Court ultimately approves something less than what plaintiffs' request on those items, that would not be inconsistent with the terms of Settlement Agreement. For that reason, the Bank submits that, whether adopted or deferred, the Report's findings regarding incentive awards and plaintiffs' fees and costs should not be considered a "denial," even in part, of the motion for preliminary approval of this settlement.

## III. THE COURT SHOULD CLARIFY THAT THE CLASS IS BEING CERTIFIED FOR SETTLEMENT PURPOSES ONLY.

As a point of clarification, the Bank also requests that the Court note that any preliminary approval of class certification is for *settlement purposes only*. Though the Report addresses plaintiffs' Motion for Preliminary Approval of a Class Action Settlement, it does not expressly provide that preliminary approval of the settlement class certification is only for settlement purposes. The Settlement Agreement here, however, and the parties' proposed order of preliminary approval, provides exactly the same qualification — that the parties stipulate to the certification of the settlement class for settlement purposes only. (*See* Settlement Agreement at ¶¶ 3.1-3.2, and Exh. A at ¶ 4.) Were the settlement not to be approved, the Bank reserves its rights to object fully to class certification for trial purposes. (*Id.*)

That distinction is meaningful under Rule 23 as well. The Report faithfully recites the

general proposition that, under *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997), the Rule 23 standards must still be met even for class certification in the context of a settlement.  But *Amchem* also recognizes that the application of Rule 23 standards in the settlement context may effect a very different outcome than where certification is contested for trial purposes.  *Id*. at 620-21 ("Settlement is relevant to a class certification. . . .  Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems[.] . . . [The Court of Appeals] should have acknowledged that settlement is a factor in the calculus [to certification]."); *Gunnells v. Healthplan Servs.*, 348 F.3d 417, 423 n.2, 440 (4th Cir. 2007) (noting that *Amchem* "articulat[es a] different standard for settlement-only class certification").  Indeed, the trend among Courts of Appeals has been to underscore the rigorous analysis that must be undertaken before certifying a class action for trial purposes.  *See, e.g.*, *In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305, 316-21 (3d Cir. 2008) (where certification was contested, court cited the "critical need . . . to determine how the case will be tried").  Accordingly, the Bank requests that the preliminary approval order clarify that certification of the proposed settlement classes shall be for settlement purposes only.

## CONCLUSION

Bank of America respectfully requests that the Court adopt the Report and Recommendation with the following modifications:

1. The Court has the authority to enter the Consent Order as a consent decree, and defers until final approval the question of whether the content of the proposed Consent Order is consistent with the FCRA's credit score disclosure provisions;

2. The findings with respect to plaintiffs' incentive awards and requests for fees and costs shall not constitute a denial of preliminary approval; and

      3. The preliminary approval of class certification contemplated by the Agreement is for settlement purposes only.[1]

February 10, 2010

Respectfully Submitted,

MORRISON & FOERSTER LLP

By: s/ Michael J. Agoglia
Michael J. Agoglia
Alexandria A. Amezcua
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

John A. Trocki III
Virginia Bar No.: 38656
MORRISON & FOERSTER LLP
1650 Tysons Boulevard, Suite 400
McLean, VA 21102
Telephone: (703) 760-7112
Facsimile: (703) 760-7777

R. Grant Decker
Virginia Bar No.: 20618
J. Douglas Cuthbertson
Virginia Bar No.: 41378
MILES & STOCKBRIDGE P.C.
1751 Pinnacle Drive, Suite 500
McLean, VA 22102
Telephone: (703) 903-9000
Facsimile: (703) 610-8686

Attorneys for Defendant
Bank of America, N.A.

---

[1] Consistent with Bank of America's representation to Magistrate Judge Urbanski at the preliminary approval hearing, the Bank separately submits the Proposed Preliminary Approval Order, originally submitted as Exhibit A to the Settlement Agreement (Docket No. 68-2), with notations regarding the relevant time frames for the scheduling of the Fairness Hearing, deadlines for class members to opt-out or to object, and the like.  Per the instructions previously received from the clerk's office, Bank of America will provide a copy to the Court and Class Counsel by email instead of filing the proposed order.

## Certificate of Service

  I hereby certify that on February 10, 2010, I electronically filed the foregoing **BANK OF AMERICA, N.A.'S OBJECTION TO REPORT AND RECOMMENDATION REGARDING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Timothy E. Cupp, Esq.
Cupp & Cupp, P.C.
1951 Evelyn Byrd Avenue, Suite D
P.O. Box 589
Harrisonburg, VA  22801

Matthew J. Erausquin, Esq.
Consumer Litigation Associates, P.C.
3615-H Chain Bridge Road
Fairfax, VA  22030

Ian B. Lyngklip, Esq.
24500 Northwestern Highway, Ste. 206
Southfield, MI  48075

Leonard A. Bennett, Esq.
Consumer Litigation Associates, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, VA  23606

                s/ Michael J. Agoglia
                Michael J. Agoglia
                MORRISON & FOERSTER LLP
                425 Market Street
                San Francisco, CA  94105
                Telephone:  (415) 268-7000
                Facsimile:  (415) 268-7522
                Email: MAgoglia@mofo.com

                Attorney for Defendant
                Bank of America, N.A.

2798886