

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| THOMAS D. DOMONOSKE,<br>individually and on behalf of all those<br>similarly situated<br>    Plaintiff, | )<br>)<br>)   Civil Action No. 5:08CV0066<br>)<br>) |
| v. | )   <u>MEMORANDUM OPINION</u><br>)<br>) |
| BANK OF AMERICA, N.A.,<br>    Defendant. | )   By: Samuel G. Wilson<br>)   United States District Judge |

These are consolidated civil actions brought by Thomas Domonoske and Victor Rivera, plaintiffs, against defendant, Bank of America, N.A. ("the Bank"), seeking damages, attorney's fees and costs pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, as remedies for the Bank's alleged failure to provide them with certain credit score disclosures "as soon as reasonably practicable" as mandated by § 1681g(g) of that Act. The court has jurisdiction over these actions pursuant to 15 U.S.C. § 1681p. Plaintiffs moved to certify these two suits as a single class action for settlement purposes and for preliminary approval of their proposed settlement. The court referred their motion to the United States Magistrate Judge for a report and recommendation. The Magistrate Judge has filed a report recommending that the court grant in part and deny in part plaintiffs' motion. Although the Magistrate Judge has recommended preliminary class certification, he has also recommended that the court excise several of the proposed settlement's provisions. The plaintiffs and the Bank have objected to the Magistrate Judge's report. According to the Bank, at least one of the excised provisions is material to the settlement, and there should be no class certification without it. The court agrees with the Magistrate Judge, albeit on somewhat different grounds, that the court should not

approve this settlement as tendered, and agrees with the Bank, that the provision to be excised is material to the settlement. Accordingly, the court is constrained to deny class certification.

I.

The Magistrate Judge's report details the procedural history and the facts of this case, and the court recounts here only those that it considers necessary for an understanding of the court's decision to deny preliminary class certification.

This is a consolidated civil action by plaintiffs against the Bank, alleging that the Bank, either negligently or willfully, failed to provide them (as required by §1681g(g) of the FCRA) with certain credit score disclosures "as soon as reasonably practicable" following their respective consumer credit loan applications.[1] Rivera filed the first of these actions in the Eastern District of Virginia seeking to represent others similarly situated who applied for loans with the Bank, and Domonoske filed the second in this court seeking to do the same. Later, Rivera and the Bank filed a joint stipulation in the Eastern District to transfer that case to the Western District to effect a "global settlement" of all claims, and a Magistrate Judge in the Eastern District transferred Rivera's action to this district.

Rivera maintains that he never received a score at all, though the Bank claims that it sent it to him within a week of receiving his application. Domonoske, who is an attorney, contends that his credit score was not disclosed to him for over a month from the time of his initial application. During that time, Domonoske purchased his own credit score for $6.00 and

---

[1] The Act provides, in the case of negligent noncompliance, for recovery of only actual damages. See 15 U.S.C. § 1681o. In the case of willful noncompliance, the Act allows for statutory damages between $100.00 and $1,000.00, as well as punitive damages. See 15 U.S.C. § 1681n. In this case, Domonoske has alleged $6.00 in actual damages, the cost of purchasing his credit report himself before the Bank sent it to him.

contacted numerous representatives of the Bank in an effort to discern the Bank's standard practice for disclosing consumer credit scores.

According to evidence filed in this court, the Bank uses two software systems to process loan applications: ACAPS and Legacy. According to the Bank, when a loan application is processed by the ACAPS software, a consumer credit report is processed within twenty-four hours of the Bank's decision on the loan application, and usually mailed within two days. For loans processed using the Legacy system, the score disclosures are processed and mailed on a weekly basis, whether or not a loan decision has been made. Taken together, the Bank asserts that the average processing time of the disclosures at issue here was between five and seven days, but that in nearly all cases, the notices were delivered to the potential class members within fourteen days of the Bank's use of their credit reports. The named plaintiffs allege that these institutional procedures are themselves a violation of the Act, and that, personally, they did not receive their credit scores as soon as reasonably practicable.

On September 30, 2009, the parties submitted a motion to certify provisionally, for purposes of effectuating a settlement of the case, a class of approximately 3.5 million individuals. The primary components of that proposal are: (1) the settlement class would include two subclasses: (a) those individuals whose loan applications were processed by the ACAPS system between August 8, 2006, and September 12, 2008, whose credit score disclosures were triggered more than three days after the receipt of the application, and (b) all individuals whose loan applications were processed by the Legacy system between May 28, 2006, and July 11, 2009; (2) the Bank would pay a gross settlement of $9.95 million, plus costs; (3) class members would

receive a proportionate share, up to $100.00 per loan application, but no less than $2.00;[2] (4) the two named class representatives would each receive an incentive award of $5,000.00, plus costs; (5) the Bank would not object to a fee request by the plaintiffs' attorneys of up to 25% of $9.4 million ($2.35 million); (6) the Bank would agree to change its procedures to trigger the disclosure of consumer credit scores within three business days of a loan application; and (7) the court would enter an "Injunction and Consent Order" containing the following or "substantially similar" language:

> For a period of one (1) year commencing after the Effective Date, for those transactions for which Bank of America is in receipt of an application for a real estate-secured loan subject to the requirements of 15 U.S.C. § 1681g(g), Bank of America shall trigger the Credit Score Disclosures within three business days after its receipt of the application, and shall mail the Credit Score Disclosures within four business days after its receipt of the application.
> In light of the uncertainty raised by plaintiff regarding the proper application of the FCRA to Bank of America's practices, and Bank of America's agreement to the terms of this Order as part of the relief provided under the Court-approved Settlement Agreement, *to the extent that Bank of America engages in conduct in conformity with this Order, such conduct shall be deemed to be in compliance with the FCRA, and Bank of America shall not be subject to further liability for such conduct.*

(Proposed Injunction and Consent Order at 2) (emphasis added).

The settlement agreement expressly provides that the entry of this "injunction and consent" order (which "deems" the Bank's future three-day disclosures to be in compliance with the FCRA) is a "material term" of the proposed settlement and that the Bank reserves the right to "void" the agreement in the event the court refuses to enter it.

---

[2] Based on the amount of the settlement and the large number of potential class members, the actual award to those members would likely be far less than $100.00. Indeed, the proposed settlement itself states that if only 15% of potential class members submit claims, they would each receive $14.00.

The court referred the motion for preliminary class certification and settlement to the Magistrate Judge for a report and recommendation. After a hearing, the Magistrate Judge recommended preliminary class certification under Rule 23 of the Federal Rules of Civil Procedure, but also recommended that the court reject the attorney's fees provisions as written, the incentive payments to the class representatives, and the proposed "Injunction and Consent Order." He specifically noted that injunctive relief is not a proper judicial remedy for a private litigant under the FCRA.

Both the plaintiffs and the Bank filed objections to the Magistrate Judge's recommendation. The plaintiffs objected to his recommendation regarding attorney's fees and incentive awards, and the Bank objected to his recommendation concerning the "Injunction and Consent Order."[3] In its objection to the report, the Bank admits that true injunctive relief is not available under the FCRA, but asserts that the proposed order was simply inaccurately labeled, and instead should be considered merely a "Consent Order" which, it claims, the court has the power to enter and enforce. According to the Bank, the order would "achieve[] a fundamental benefit of the settlement for the Bank . . . [and is] so important to the Bank that it [has] the right unilaterally to void the Settlement Agreement" if the court does not enter the order. (Bank Obj. 2.)

The court held a hearing on all of the objections on March 23, 2010, and specifically questioned counsel for the Bank as to the purpose of the proposed order. Counsel responded that the proposed order would provide the Bank "prospective relief" from future FCRA lawsuits.

---

[3] The plaintiffs objected to the findings regarding attorney's fees and representative payment as improperly considered by the Magistrate Judge. The court's decision renders those concerns moot, however, and therefore the court declines to examine them.

5

When the court asked the Bank's counsel if the order seeks to bind only the current class members, the Bank responded *"no . . . [the order] only touches the conduct of the Bank with respect to people outside of the defined class period."* According to the Bank, the purpose of the proposed order "is to buy peace from those [future] lawsuits . . . [a]nd more specifically to say, there's an order in place from Judge Wilson in the Western District of Virginia which says, if you do this it shall be deemed compliant with the FCRA for the express purpose of buying peace."

## II.

The Magistrate Judge's report properly discerned that it is problematic to award private litigants injunctive relief under the FCRA because that Act limits a private individual's remedies to damages and attorneys fees. See 15 U.S.C. § 1681n-o; Washington v. CSC Credit Servs., 199 F.3d 263, 268 (5th Cir. 2000); Jones v. Sonic Auto., Inc., 391 F.Supp.2d 1064, 1066 (M.D.Ala. 2005). For the same reason, it might also be problematic to award a private litigant declaratory relief. See CSC Credit, 199 F.3d at 269; White v. First Am. Registry, Inc., 378 F.Supp.2d 419, 424 (S.D.N.Y. 2005); Gelman v.State Farm Mutual Auto. Ins. Co., 2007 WL 2306578 *9 (E.D.Pa. 2007). Therefore, the parties have retreated to the dubious position that the self-styled "Injunction and Consent Order" is, in fact, nothing more than a consent order. Irrespective of how the order is titled, however, it is fundamentally flawed as written because it purports to declare the rights of non-class members by "deeming" the Bank's future conduct that is in conformity with the order to be in compliance with the FCRA. As the Bank acknowledges, the provision has no application to class members because it "only touches the conduct of the Bank with respect to people outside of the defined class period." The Bank has included the provision in the proposed order "for the express purpose of buying peace." Its purpose is to deter future

6

lawsuits by non-class members. But from a due process perspective, the provision would not be worth the paper it would be written on and cannot bear the court's imprimatur. See <u>Marseilles Hydro Power, LLC, v. Marseilles Land and Water Co.</u>, 299 F.3d 643, (7th Cir. 2002) ("[A]n unenforceable order is no order at all.") Accordingly, as it is a material term of the proposed settlement, the court declines to certify this matter as a class action for settlement purposes.

### III.

For the foregoing reasons, the motion to certify the class and for preliminary approval of the class settlement is **DENIED**.

**ENTER**: This 5th day of April, 2010.

_____
UNITED STATES DISTRICT JUDGE