IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| THOMAS D. DOMONOSKE, individually and on behalf of all those similarly situated,<br><br>        Plaintiff,<br>v.<br><br>BANK OF AMERICA, N.A., a national banking association,<br><br>        Defendant. | Civil Action No. 5:08-cv-00066 |
| VICTOR RIVERA, individually and on behalf of all those similarly situated,<br><br>        Plaintiff,<br>v.<br><br>BANK OF AMERICA, N.A., a national banking association,<br><br>        Defendant. | Civil Action No. 5:09-cv-00080 |

## DECLARATION OF MEDIATOR EDWARD A. INFANTE

I, Edward A. Infante, state as follows:

### CLASS ACTION MEDIATION EXPERIENCE

1. I am the former Chief Magistrate Judge of the United States District Court, Northern District of California, and am I currently serve as a mediator with JAMS. As a U.S. Magistrate Judge and with JAMS, I have over 30 years of dispute resolution experience, having conducted over 2,500 settlement conferences, a significant number of which were in class actions and other complex litigation.

2. In my capacity as a JAMS mediator, I specialize in mediating complex business litigation, securities class actions, securities, employment, intellectual property, antitrust

cases and consumer class action cases.

3. As a U.S. Magistrate Judge, I oversaw the settlement process of numerous class cases. In JAMS, just over the last ten years I have mediated approximately 300 class action cases.

## GENERAL CLASS LITIGATION

4. In many class actions, the presiding court will bifurcate the case into discovery and merits phases.

5. Such bifurcation is common in complex class litigation, allowing the parties to determine whether the case is suitable for class treatment before undertaking the more expensive discovery associated with preparing the action for dispositive motions and trial.

6. Bifurcated litigation generally reduces the risks and costs associated with the litigation of complex litigation, especially where it is anticipated that the matter may be resolved voluntarily before trial.

7. Those efficiencies result from allowing the parties to determine whether the case will be handled as a collective action before a determination of the merits is rendered by the court. Such determinations allow both sides to better understand the potential exposure and costs resulting from litigation.

8. In the realm of class action cases, the resolution of certification usually heralds the end of the case by reason of the change in relative bargaining strength of the parties following the decision.

9. Because the determination of certification represents such an important decision and holds an inevitable potential to radically shift the relative bargaining positions of the parties, the parties to class cases will customarily take an adverse determination to immediate appeal under Rule 23(f), thus imposing additional costs to all.

10. It is my opinion that these generalized realities are recognized by competent class counsel.

11. As a result, mediation is particularly effective in reducing the overall costs of class litigation and resolving putative class cases where the Court has yet to determine the issue of certification, precisely because neither party has obtained a strengthened bargaining position by virtue of a favorable certification ruling. In these circumstances, the parties benefit from the impartial review by a qualified mediator, without suffering the exposure that would usually accompany dispositive motions or a class certification motion.

## GENERAL CLASS SETTLEMENTS

12. In class cases which are mediated prior to certification, the following represent common barriers to resolution of the case on a class-wide basis

   a. Uncertainty as to whether the matter is suitable for class treatment.

   b. Uncertainty as to the underlying merits.

   c. The availability of bona fide defenses.

   d. Where damages are unliquidated, the potential jury appeal of the lead Plaintiff's claim.

   e. The availability of insurance coverage, and potential reservations.

   f. The ability to identify responsible sources of payment within the class defendant's company.

   g. The ability of the defendant to designate an authorized bargaining representative.

   h. The size of the class.

   i. The amount of potential exposure.

j.  The amount of discovery needed and completed on the issues relating to certification.

k.  The amount of discovery needed and completed on the issues relating to merits.

l.  Potential costs of litigation and notice.

m.  The relative bargaining skill of the parties.

n.  The willingness of the parties to negotiate to a settlement.

13. Typically, negotiations involving class cases require counsel to have a thorough knowledge of both the substance of their claim, as well as the procedure necessary to litigate and settle the claim.

14. These negotiations may likewise call upon counsel to evaluate whether discovery can further enhance the claim and its certifiability. Likewise, negotiations may turn on complex matters of possible procedure or evidence.

15. The challenges of recognizing and balancing obstacles to settlement, certification, and approval become amplified in the mediation process where negotiations occur over a relatively short span of time, thus requiring class counsel to call upon all of these skills under the deadlines of the mediation process.

16. Even after a case has successfully mediated the substance of a settlement, details in the drafting of the agreements may call upon counsel to make difficult decisions which can influence whether a claim can be certified or finally approved.

17. As such, negotiation of a class settlement and its supporting documentation are among the unique and most valuable skills of class counsel.

18. It is not uncommon for class cases to consume large amounts of time in the completion of a settlement. It is also not uncommon in class cases for the mediation and settlement

process to be a greater challenge and to consume more work hours than the merits litigation itself.

## FEES

19. Within the scope of negotiations, it is customary for the parties to negotiate fee provisions after settlement of the class claim.

20. In cases across the country which I have mediated --

    a. By far, the most common method of compensating class counsel is with a percentage of the common fund.

    b. In practice, the benchmark fee in those cases where a common fund is awarded is usually 25% of that fund.

    c. In large class action settlements, that percentage generally decreases below 25%.

    d. In smaller class action settlements involving sums less than $1 million, that percentage generally increases above 25%.

21. In many that are successfully mediated before such time as a court determines the issue of certification, the benchmark attorneys' fee award is usually 25%.

22. Such fee requests are common and not out of the ordinary.

23. Based largely upon the prevailing consensus of courts, such fee requests are routinely granted preliminary approval, irrespective of which phase the case was in at such time that a settlement was reached.

24. I am also aware that many class action settlements include the payment of an incentive or service award to the named plaintiffs who serve as representatives for the class. Such awards are paid in order to compensate the class representatives for their own sacrifices and work on behalf of the class, including responding to discovery, sitting for

depositions, and working with class counsel as the case proceeds. Thus, such awards in the range of $5,000 are very common.

25. I have mediated numerous class settlements which thereafter received Rule 23 approval that included incentive awards ranging in amounts from $1,000 to $10,000.

## MEDIATION EFFORTS IN THIS CASE

26. I served as a mediator in this case.

27. At the time of the mediation, I was provided with significant evidence by the parties, and extensive and comprehensive settlement position papers.

28. At the mediation, I also had access to the parties in private caucuses where I was provided additional information that had yet to be submitted as evidence in the case, but which the parties asserted would likely become evidence in the case either during the merits or certification proceedings.

29. I conducted two separate in-person sessions with the parties in the JAMS San Francisco office and a number of individual caucuses by phone.

30. At no time during the mediation communications between the parties regarding the size of the payment to the proposed class did either party attempt to negotiate the payment of attorneys fees, or any incentive or service award for the named Plaintiffs.

31. During these settlement discussions I drew the following conclusions:

   a. When this case was presented to me, the parties had proceeded in their formal discovery only through the first half of a bifurcated discovery plan in which discovery and motion practice was divided into separate class and merits phases;

   b. Based upon the totality of information offered to me at the mediation, I believe that I was given access to the principal evidence that would be offered in favor

and in defense of this case, as well as in favor and in defense of certification;

c. Simply put, there was no clear way for either party to predict the ultimate outcome either as to liability or damages.

32. Given the evidence and available defenses and manner in which similar actions have been defended, I concluded that the case presented the potential for significant litigation costs, risks, and exposure to both sides.

33. I reviewed a copy of the final settlement agreement in this matter and understand that the basic terms are as follows:

a. The class will receive a cash payment in the form of a claims distribution, with payments adjusted by the number of class members that claim a cash distribution.

b. The common fund will be $9.9 million, less attorneys fees and related expenses paid;

c. The total number of potentially eligible class members is approximately 3 million;

d. The fund will never revert to the Defendant;

e. Defendant will pay all third-party administration and class notice expenses, which the parties have represented will exceed an additional $2 million;

f. Class notice will be made by individual direct mail, postage pre-paid;

e. Defendant will not object to any attorneys fee petition that Plaintiffs' counsel make against the common fund provided the percentage does not exceed 25% of the first $9.4 million of the common fund (thus, no more than 23% of the full $9.9 million claims fund or 20% of the gross amount paid by Defendant including costs of administration and notice).

f. Defendant will not object to any incentive award paid to the class representative

after court approval so long as the amount of that award does not exceed $5,000.

34. In my opinion, the Plaintiffs' attorneys secured significant benefits for the class beyond those that were initially offered during the mediation. Based upon my years of experience in mediating other consumer class cases, the settlement appears to be fair and adequate.

35. The attorneys' fee that Plaintiffs' counsel may ultimately request in this settlement appears to be well within the range of those fees which I have mediated and seen preliminarily approved by courts for cases at a similar posture. The fee is well within the expected range of fees to be expected in a settlement of this size and resolved during this phase of the case.

36. The potential incentive award of $5,000 is also within the range of such awards customarily agreed and approved in consumer class action cases that I have previously mediated.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 10th day of February, 2010.

EDWARD A. INFANTE