## UNITED STATES DISTRICT COURT
## IN THE WESTERN DISTRICT OF VIRGINIA
### Harrisonburg Division

**THOMAS DOMONOSKE,**
**Individually and on behalf others similarly situated,**

     **Plaintiff,**

 **v.**

                                           **Case No. 05:08-CV-00066**
                                           **Hon. Samuel G. Wilson**

**BANK OF AMERICA, N.A.,**

     **Defendant.**

---

**VICTOR RIVERA,**
**Individually and on behalf others similarly situated,**

**v.**

                                           **Case No. 05:09-CV-00080**
                                           **Hon. Samuel G. Wilson**

**BANK OF AMERICA, N.A.,**

     **Defendant.**

---

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS

COMES NOW the Plaintiffs, by counsel, and in support of their and Class Counsel's

Motion for Attorneys' Fees, Costs and Incentive Awards, they state as follows:

### I.      OVERVIEW

Bank of America agreed to pay in excess of $11.95 million to the benefit of the class and

in settlement: $9.95 million in a cash common fund and an amount in excess of $2 million for

class administration and notice.  None of this amount will ever revert to the Defendant.  Despite

the considerable challenges and difficulties presented in these two cases – originally litigated separately - the proposed settlement negotiated and obtained by the work of three Plaintiffs' firms and the service of the two class representatives would exceed all but two other approved FCRA class settlements in the known history of the statute.[1]

In negotiation of this settlement, Plaintiffs' counsel did not suggest, demand, incorporate into a settlement position or condition further negotiation on the payment of attorneys' fees, costs or an incentive award.  They expressly refrained from such discussion.  The Parties reached agreement at $9.4 million as an award for the class members.  The attorneys' fee then was to be paid as a percentage of this fund in the amount of 25%.

With regard to the issue of attorneys' fees and expenses, the settlement agreement states:

8.1    Attorneys' Fees and Expenses.  Class Counsel agree to request approval of attorneys' fees in an amount not to exceed 25% of $9,400,000 of the Common Fund (approximately 23% of the Common Fund).  In addition, Class Counsel and the Class Representatives will also request Court approval of their litigation costs and expenses.  Bank of America will not oppose any such requests, and will pay any fees approved by the Court in an amount that does not exceed 25% of $9,400,000 of the Common Fund, and any costs and expenses approved by the Court, and will do so out of the proceeds of the Common Fund within twenty-one (21) days after the Effective Date.

Settlement Agreement at ¶ 8.1.

Still, after the Parties began development of a notice and administrative plan, two conclusions became obvious:  (1) it would be considerably less expensive to provide direct mail notice by Fourth Class postage; and (2) a claims process would not only better accommodate the possibility that some consumers receiving notice did not receive an unlawfully delayed credit score, but it would as well save significant money.   Accordingly, Plaintiffs' counsel suggested

---

[1]  *In re Trans Union Corp. Privacy Litigation*, Civil No. 00-CV-4729, MDL Docket No. 1350 (N.D. Ill.); *Williams, et als. v. Lexis Nexis, et als*. Civil No. 3:06cv241 (E.D. VA).  A third class settlement exceeded the recovery in this case, but all of its $15 million was paid in attorneys' fees with no money paid to the class.  *Clark v. Experian*, Civil No. 8:00-1217-24 (D.S.C.).

and then began a successful renegotiation of the settlement structure conditioned upon their ability to retain most of this savings for the benefit of the class, ultimately arriving at a higher common fund amount of $9.95 million.   Plaintiffs' counsel did not seek to adjust their attorneys' fee percentage in order that all of the new savings would remain in the fund.  Accordingly, <u>if the Court approves the requested amount – 25% of the original $9.4 million, this would actually constitute only 19.7% of the gross $11.95 million to be paid by Bank of America in settlement which represents the enhanced $9.95 million common fund, added to the additional money obtained for notice and administrative costs.</u>

In each stage of these two cases, Plaintiffs' counsel worked to improve the leverage and, later in mediation, the result for the class members.   The results in the case were exceptional.  If the attorneys' fee is large, it is solely because the success for the class was proportionately so. Class counsel and Plaintiffs absorbed all of the risk in these cases.  Had they failed, their own resources – time and money – were at risk.  Given that condition, this is not a case with an inordinate windfall.  The attorneys in the case incurred significant time and legal fees since these cases were filed in early to mid 2008.  The common fund percentage properly due is not a remarkable multiplier of the hours actually incurred, particularly in light of other consumer class settlements approved in Virginia federal courts as well as nationally.

## II.      THE COURT SHOULD APPROVE ATTORNEYS FEES AS REQUESTED

Class counsel asks the Court to approve their attorneys' fee and cost request in the amount of $2,350,000.  This amount represents 23.6 % of the gross common fund monetary benefit of $9.95 million, or 25% of the initially negotiated net cash fund of $9.4 million, less the expense billed by the administration company for the Spanish language enhancements made unilaterally by Class counsel during the notice period.  If the $2 million provided by Bank of

America for notice and administration costs is factored in, the true percentage of recovery drops to 19.7%.

**A.     Attorneys Fees are Properly Awarded as a Percentage of the Benefit Obtained for the Class.**

The focus of a fee determination in a class settlement is the actual benefit obtained for the class. MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.71 ("Compensating counsel for the actual benefits conferred on the class members is the basis for awarding attorney fees. The 'fundamental focus is the result actually achieved for class members.'  That approach is premised on finding a tangible benefit actually obtained by the class members.  In comparing the fees sought by the lawyers to the benefits conferred on the class, the court's task is easiest when class members are all provided cash benefits that are distributed.").    In the Fourth Circuit as well, attorneys' fees in common fund cases such as this one are generally awarded on a percentage-of-the-recovery basis.  *Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05CV00187, 2007 WL 119157, at *1 (M.D.N.C. Jan. 10, 2007); *see DeLoach v. Philip Morris Cos.*, No. 00-1235, 2003 WL 23094907, at *3 (M.D.N.C. Dec. 19, 2003) (citing, with approval for this same proposition, *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 215 (D. Me. 2003)); *see also Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 502 (E.D. Va. 1995) ("Although the Fourth Circuit has not yet ruled on this issue, the current trend among the courts of appeal favors the use of a percentage method to calculate an award of attorneys' fees in common fund cases.").  Many of the largest class actions nationally, including within the Fourth Circuit have used a percentage of fund method.  *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 264 (E.D. Va. 2009) (surveying class settlements that have awarded fees using the percentage of fund method); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 215 (D.Me.2003); *In re Vitamins Antitrust Litig., Misc. No. 99-197, MDL No.*

*1285*, 2001 WL 34312839, at *3 (D.D.C. July 16, 2001). *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (review of 289 class action settlements demonstrates overwhelming use of the percentage of common fund fee method).

### B.   A Fee of 19.7% is in the low range of Fee Requests and Awards.

When Courts do apply the "percentage of benefit" method for approving an attorneys' fee, they almost always award fees of a least twenty-five percent or more in cases in which class counsel generates a common fund for the benefit of the class. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.121 (explaining that "the vast majority of courts now permit or direct district courts to use the percentage-fee method" and "[a]ttorney fees awarded under the percentage method are often between 25% and 30% of the fund"). In fact, a comprehensive study of attorneys' fees in class action cases notes "a remarkable uniformity in awards between roughly 30% to 33% of the settlement amount." Theodore Eisenberg and Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. OF EMPIRICAL LEGAL STUDIES 27, 31, 33 (2004). See also, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir.1998) (referring to 25% in attorneys' fees as a "benchmark award"). This holds true even in instances where the class recovery runs into the hundreds of millions of dollars. *See, e.g.*, *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 295 (1st Cir. 1995) (approving award of thirty percent of $220 million); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1136 (W.D. La. 1997) (awarding thirty-six percent of $125 million); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (review of 289 class action settlements demonstrates "average attorney's fees percentage [of] 31.71%" with a median value that "turns out to be one-third"); *In re Shell Oil Refinery*, 155 F.R.D. 552, 571 (E.D. La. 1993) (fees in most common fund cases range from 20% to 30% of the fund).

Because it is not an accurate measure of the risks the attorneys assumed or the quality of the results achieved for the benefit of the class, the size of the settlement fund should not be a factor in determining the appropriate percentage to award.   Courts generally award fees of between 25 and 33 percent of the common fund notwithstanding the amount of the fund.   *In re US Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (approving award of 36% of  $3.5 million settlement fund); *Gwozdzinnsky v. Sandler Assoc.*, 159 F.3d 1346, 1346 (2d Cir. 1998) (affirming district court's award of 25% of $1 million common fund); *In re Educ. Testing Serv.*, 447 F. Supp. 2d at 631 (concluding the customary fee award for class actions "is between 22% and 27%"); *In re CMS Energy ERISA Litig.*, No. 02-72834, 2006 WL 2109499, at *1 (E.D. Mich. June 27, 2006) (awarding fee of 28.5% of $28 million settlement fund); *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 995 (D. Minn. 2005) (awarding 25% of $80 million settlement fund); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (granting attorneys fees in amount of 33 1/3% of $1.5 million settlement fund); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (awarding 33.3% of $3.8 million settlement fund); *Kidrick v. ABC Television & Appliance Rental*, No. 3:97CV69, 1999 WL 1027050, at *1-2 (N.D. W. Va. May 12, 1999) (awarding 30.6% of approximately $400,000 settlement fund, noting that "[a]n award of fees in the range of 30% of the fund has been held to be reasonable. . . . Fees as high as 50% of the fund have been awarded.") (internal citations omitted).

In this case, the fee actually requested is only 19.7% of the actual cash paid by Bank of America in the settlement, inclusive of the enhanced cash fund of $9.95 million and an additional amount in excess of $2 million paid to Rust for notice and administration.  This is in the very lowest end of the common fund fee percentages awarded in other consumer cases. Rossman

Decl. ¶ 21, Exhibit E.  Bank of America has now changed its credit scoring procedures in an important and material way and this certainly adds value to many in the class – those who will refinance or apply again for a Bank of America loan.  However, in further departure from the "norm" in some previous FCRA class settlements, the Plaintiffs are also not asking the Court to assign an economic value to the "catalyst" or procedures change that they have forced through the litigation. Plaintiffs' measure of value offered in support of the settlement is simply the cash amount actually paid by the Defendant - $ 11.95 million, or a cash net of $ 9.95 million.

**C.     The Requested Fee Meets each of the *Barber* Requirements, therefore Warranting Court approval.**

The Fourth Circuit directs its district courts to consider the following factors in determining the reasonableness of such a fee request:

(1)     The time and labor involved;
(2)     The novelty and difficulty of the questions;
(3)     The skill requisite to perform the legal service properly;
(4)     The preclusion of other employment by the attorney;
(5)     The customary fee;
(6)     Whether the fee is fixed or contingent;
(7)     Time limitations imposed by the client or the circumstances (inapplicable here);
(8)     The amount involved and the results obtained;
(9)     The experience, reputation, and ability of the attorneys;
(10)    The political "undesirability" of the case;
(11)    The nature and length of the professional relationship with the client (inapplicable here); and
(12)    Awards in similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978).  The Fourth Circuit adopted these factors from the Fifth Circuit decision *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  *Id.* at 226.  While the Court properly applies these factors in a somewhat different manner in a class case, they still offer guideposts for support of the common fund award.  Plaintiffs address each factor in turn.

1.      *The time and labor involved*

As already detailed above and in the declarations of Class Counsel, great effort and

resources were devoted to the prosecution of the *Domonoske* and *Rivera* cases. Plaintiffs' claims

involved seemingly factual discovery and legal challenge of multiple processes at Bank of

America.  Further, the legal issues presented were complex ones of first impression.  Bennett

Decl. ¶ 16, Exhibit B.  Not only did the Parties engage in contentious discovery and litigation,

but they did so in two venues with two distinct Plaintiff groups and two sets of Defense firms.

Ultimately when the Defendant agreed to a stay for the purpose of pursuing more extensive

mediation efforts, there were motions pending in both courts and cases.  Nothing about the case

was "easy."  Defendant initially pursued an aggressive and well-resourced defense strategy.  As

of December 2009, Plaintiff's counsel had expended 1948.44 hours of attorney time on the case.

By contrast, and of its own account, as of that date, Bank of America had incurred no fewer than

5,106 legal hours.   Report and Recommendation, Docket No. 89 at 36, fn. 7.  The nature and

scope of the case as well as the quality of Bank of America's defense representation required

Class Counsel to put forth the appropriate effort to achieve the best possible result for the

Classes.

2.      *The novelty and difficulty of the questions*

FCRA litigation is a complex, specialized, and quickly evolving area of law.  *Id.* ¶ 16.  In

fact, the conduct alleged to have violated the FCRA in this case was challenged under FCRA

amendments that did not take effect until December 2004. *Id.*  Furthermore, the questions raised

here and the challenged conduct are—as far as Class Counsel is aware—questions of first

impression in federal court.  *Id.* It is difficult to imagine claims more novel than ones brought for

the first time.  In addition, Plaintiffs faced the difficult burden of proving that Bank of America's

conduct was either willful or reckless, a burden rendered all the more onerous by the fact that the Defendant had received – Plaintiffs believe incorrectly - legal advice supporting its earlier systems and FCRA compliance procedures.

### 3.   *The skill requisite to perform the legal service properly*

It requires skilled counsel to manage a nationwide class action and analyze the facts, claims, and defenses under a complicated statutory scheme such as the FCRA.  *See Smith v. Krispy Kreme*, 2007 WL 119157, at *2.  Additional skill is required where, as here, the defendant is a sophisticated corporation with extensive resources, enabling it to retain sophisticated, experienced counsel.  *Id.*  Class Counsel, therefore, had to exert substantial effort to create a climate in which Defendant was willing to engage in meaningful settlement discussions. Indeed, even the settlement negotiations themselves required extensive experience—in mediation presentation and negotiation.

It is also noteworthy that the Federal Rules of Civil Procedure require trial courts to appoint class counsel.  *See* FED. R. CIV. P. 23(g).  Courts understand that knowledge of class action practice is a prerequisite to serving as class counsel.  *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.271 (2007) (listing as one criteria for selection of class counsel as "counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action").  Class Counsel squarely meet this prerequisite, having served as Lead or Co-Lead Class Counsel in numerous class actions, including successful class actions (and other complex litigation) involving FCRA claims, against some of the largest corporations in the country.  Lyngklip Decl. ¶ 33-34, Exhibit D; Bennett Decl. ¶ 7-8, Exhibit B.  Class Counsel's track record demonstrates that they were well-equipped with the requisite skill to perform the

legal work required in this case.  This factor further supports approval of Class Counsel's requested fee.

### 4.      *The preclusion of other employment by the attorney*

Class counsel has devoted over 2,571.91 hours to this case over a period of approximately 33 months. Lyngklip Decl. ¶ 6 ; Bennett Decl. ¶ 10; Cupp Decl. ¶18-19, Exhibit C.   As with virtually all law firms (and in particular, law firms that primarily handle contingent fee work), Class Counsel has finite time and resources—as a result, they are necessarily restricted in the number of cases they can take on while still providing excellent representation. Necessarily, therefore, allocation of resources to this case prevented certain funds and personnel efforts from being directed to the prosecution of others.

### 5.      *Whether the fee is fixed or contingent*

Because class actions typically involve small individual claims brought against corporate defendants, plaintiffs' attorneys routinely assume class representation on a contingent-fee basis. *See Purdie v. Ace Cash Express, Inc.*, Civil No. 3:01cv1754, 2003 WL 22976611, at *9 (N.D. Tex. Dec. 11, 2003) (explaining that "the 'customary fee' in a class action lawsuit is typically contingent, since it is often the case that no individual plaintiff has a large enough monetary stake in the litigation to justify charging on an hourly basis").  The Fourth Circuit recently cautioned in an individual case,  "Ignoring reasonable contingent fee arrangements or automatically reducing them would impair claimants' ability to secure representation. The point remains that contingency fees are an acknowledged feature of our legal landscape, approved by legislative and judicial bodies alike, that help secure for the impecunious access both to counsel and to court." *In re Abrams & Abrams*, 2010 WL 1971240 at 12 (4th Cir. 2010).

The same is true in this case— Class Counsel took the case on a contingent fee basis.  As such, Class Counsel and/or Plaintiffs funded all of the litigation and bore their own costs, Class Counsel voluntarily accepted this arrangement, despite the danger that the case would yield no return whatsoever and their investment of literally years of money, time, and energy would be lost. This factor also favors awarding Class Counsel's requested fee.

**6.**      ***The amount involved and the results obtained***

The relief in this case is genuine and tangible, in the form of cash paid directly to Class Members, with absolutely no reversion of class money to the Defendant in any circumstance. This excellent result reflects the skill, experience, and zealous advocacy that Class Counsel brought to bear for the benefit of the Classes.

**7.**      ***The experience, reputation, and ability of the attorneys***

Class Counsel includes an experienced team of litigators.  The team has nationally renowned experience in consumer class actions and most especially in FCRA litigation. In particular, both Mr. Bennett and Mr. Lyngklip have extensive national experience – in both class and individual cases - in the FCRA field.   They literally "wrote the book" on litigation of the statute as major contributing authors to the primary treatise, *Fair Credit Reporting*.  Mr. Lyngklip wrote the chapter on the FCRA provisions and industry compliance with same that were alleged in these cases.  Plaintiffs' counsel includes a 2009 Virginia Leaders in the Law, a Virginia Super Lawyer and National Lawdragon Top 500 Plaintiff's counsel, two Board members on the National Association of Consumer Advocates, attorneys who have been called to testify before Congress and the Federal Trade Commission on multiple occasions, and who have taught an estimated 75 or more Continuing Legal Education programs or sessions in

Virginia, for the Army and Navy Judge Advocate schools and nationally for the American Bar Association, various state Bars and for different national consumer advocacy organizations.

 **8.**  *The practical "undesirability" of the case*

 Class action cases and consumer cases are fraught with risk, rendering them inherently undesirable.  This case is no exception, for several reasons.  First, law firms often (and understandably) avoid litigating against large multinational corporations with the resources to hire competent and skilled counsel in a case where each plaintiffs' potential recovery is small and the fee is contingent. *see In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 632 (E.D. La. 2006) ("The risk of nonrecovery of non-contract damages was significant.  Further, the relatively small size of the individual claims made undertaking expensive litigation against a well-financed corporate defendant on a contingent fee a not-very-attractive proposition."). *See Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *33 (N.D. Tex. Nov. 8, 2005) ("Class action cases that carry with them elevated risks, such as the present litigation and that also require lengthy investigation through informal discovery, not to mention a possibility of no recovery, certainly speaks to the undesirability of the case.").  Here, Class Counsel assumed these risks and accepted a contingent-fee arrangement without any guarantee whatsoever of recovery.

 **9.**  *The customary fee/awards in similar cases*

 As two of the five largest FCRA class settlements were litigated and approved in Virginia, the Court is in a position to compare the potential attorneys' fees in this case with those approved in two recent Virginia FCRA cases settled on a class basis.  *Williams v. Lexis Nexis Risk Management*, Civ. No. 3:06cv241 (E.D. Va.  2008)(J. Payne) (Approving a 27.5% of fund fee, in a settlement with a $22 million common fund and with a lodestar cross-check above a 3x

multiplier); *Beverly v. Wal-Mart Stores, Inc,* 3:07-cv-469 (E.D. Va.  May 1, 2009) (Williams) (Approving a 27.5 percentage of fund fee in a settlement with a $6.89 million common fund without a lodestar cross-check).  Prior to the first of these settlements, the largest FCRA class settlement was *Clark v. Experian, et al.,* 2004 WL 256433 (D.S.C. 2004)[2], a settlement in which no money was paid to the class with $15 million in attorneys fees approved (after only four depositions, one round of discovery and limited motions practice).  The benefit to justify such a fee was simply the injunctive relief and remedial changes to the manner in which each national consumer reporting agency would furnish class member credit reports.[3]  In contrast, despite the greater success for the Class in this case, Plaintiffs' counsel would be bound to seek only a proportionate recovery and a percentage below each of these previous cases.

Because Class Counsel's requested fee is reasonable under the circumstances of this case and the applicable law, the Court should award it.

**D.    A Lodestar Cross-Check Verifies that Class Counsel's Requested Fee is Reasonable Due to the Significant Amount and Quality of Work Completed in this Case**

As already set forth, a percentage of the recovery is the customary approach for awarding fees in a common-fund case such as this one.  Although not a required facet of its analysis in a common-fund case, the Court may choose to cross-check the percentage fee against Class Counsel's lodestar for their work in prosecuting the Classes claims.  *Smith v. Krispy Kreme,* 2007 WL 119157, at *3 (awarding fees as a percentage of the common fund, and remarking that "[i]t is not necessary for the Court to conduct a lodestar analysis").  Here, when Class Counsel's lodestar and multiplier are considered against the substantial amount of work they completed in

---

[2] *Clark* involved the improper reporting of "included in bankruptcy" account notations on the credit reports of co-obligors who had not filed for bankruptcy themselves.
[3] Present Class counsel, Mr. Bennett, appeared in the case as lead objectors' counsel.  He was successful in forcing some changes to the settlement, but despite objection, he was unable to prevent the payment of such a large fee to the attorneys to the exclusion of the class.

this case and the outstanding result achieved for the Class, the lodestar cross-check further verifies that Class Counsel's fee request is indeed reasonable.

     **1.**     **Class Counsel's lodestar and resulting multiplier**

Plaintiffs' counsel has assembled their attorneys hours in the format required by Senior District Court Judge Payne in *Williams v. Lexis Nexis Risk Management*, Civ. No. 3:06cv241 (E.D. Va.  2008) and broken out by category of task performed.

The records of Plaintiffs' counsel conservatively evidence no fewer than 2,571.91 hours of attorney work.  Bennett Decl. ¶ Cupp Decl. ¶ Lyngklip Decl. ¶   It is also estimated that the case will continue to require significant work through and then after the final Fairness hearing as counsel remains responsible for protecting the class, responding to inquiries from class members and prosecuting the case through final approval, distribution, possible appeal and dismissal. Further, these statements of hours are subject to additional caveats.   While the data provided evidences the hours as stated above, the statements do not reflect all of the time and expense actually incurred in the case. Plaintiffs' counsel have maintained records – including time slips – in varied manners depending upon the law firm.   They have not billed paralegal time, expenses for copying or mailing and have limited billings for email to 0.1 hourly increments even when many such exchanges required significantly more work that that increment conveys.   The objective of this effort was to provide an "estimate" of the work performed as a possible "cross-check" against the percentage of fund calculation. MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.724 (In common fund cases, "judges frequently call for an estimate of the number of hours spent on the litigation and a statement of the hourly rates for all attorneys and paralegals who worked on the litigation. Such information can serve as a "cross-check" on the determination of the percentage of the common fund that should be awarded to counsel.")

As of February 3, 2011, Class Counsel's lodestar figures are:

| | |
|---|---|
| Lyngklip and Associates | $ 345,868.75 |
| Consumer Litigation Associates | $ 376,845.00 |
| Timothy Cupp | $ 269,950.00 |

yielding a total lodestar of $992,663.75.  Lyngklip Decl. ¶ 6 ; Bennett Decl. ¶ 10; Cupp Decl. ¶18-19.  In finalizing and implementing the Settlement (responding to class member inquiries and the like) and challenging potential appeals, Class Counsel anticipates incurring an additional modest, but not insignificant amount in lodestar fees.

The total amount sought for fees, costs and expenses is $2,350,000.  The total fee, therefore, results in a lodestar multiplier of 2.36.   Based on the high quality of the work performed and the excellent recovery achieved for the Class, the Court should endorse such a multiplier, which is eminently reasonable when compared to multipliers approved in other cases, and grant Class Counsel's fee request.

**2.    The Court should approve the fees because a cross-check multiplier of  2.36 is reasonable under the circumstances and outcome of this case.**

The Fourth Circuit instructs that, in evaluating a fee award, the single most important factor is the result obtained for the plaintiff.  *McDonnell v. Miller Oil Co., Inc.*, 134 F.3d 638, 641 (4th Cir. 1998).  The level and quality of the work performed, however, typically warrants approval of lodestar multipliers that are higher than average.  *See Deloach v. Philip Morris Cos.*, No. 1:00CV01235, 2003 WL 23094907, at *10-11 (M.D.N.C. Dec. 19, 2003) (approving a multiplier of 4.45 due in large part to "the valiant work of the lawyers on both sides").  This is one such case.

As already set forth in detail above and in the accompanying declarations of Class Counsel, the Parties here conducted a significant amount of discovery, claim evaluation, motion

practice, and mediation preparation and negotiations.  With multipliers between 3 and 4.5 quite

common, *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 465 (S.D.N.Y. 1998),

Courts nationwide have – many times over –  approved multipliers larger than the one Class

Counsel requests here, sometimes in cases in which much less work was completed.  *See, e.g.*, *In*

*re Charter Commc'n, Inc., Sec. Litig.*, No. MDL 1506, 4:02-CV-1186 CAS, 2005 WL 4045741,

at *1, *18 (E.D. Mo. June 30, 2005) (approving lodestar multiplier of 5.61); *In re Xcel Energy,*

*Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 989 (D. Minn. 2005) (multiplying

lodestar by 4.7 in a case involving review of documents as well as discovery responses that was

resolved without plaintiffs taking any depositions and after only two days of mediation); *In re*

*Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) (awarding lodestar

multiplier of 6.96 despite the fact that the parties engaged in mostly informal discovery and took

no depositions); *Maley v. Del Global Techs. Corp.*, 186 F.Supp.2d 358, 362 (S.D.N.Y. 2002)

(describing multiplier of 4.65 as "modest" in a case in which plaintiffs conducted no depositions,

only interviews, and confirmatory discovery consisted of tens of thousands of pages of

documents); *Di Giacomo v. Plains All Am. Pipeline*, Nos. Civ.A.H-99-4137, Civ.A.H-99-4212,

2001 WL 34633373, at *3, *11 (S.D. Tex. Dec. 19, 2001) (endorsing multiplier of 5.3 despite no

depositions being taken and most of the discovery was informal or documentary); *see also*

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (affirming multiplier of 3.65 to

compensate class counsel for risk of taking the case); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185,

197-98 (S.D.N.Y. 1997) (approving multiplier of 5.5 in what the court described as risky and

hard fought litigation).  Accordingly, the Court should grant Class Counsel's request given that a

multiplier of 2.36 is exceedingly reasonable from a cross-check perspective.

   **3.    Class Counsel's Standard Hourly Rates are Reasonable and Commensurate
with Their Experience and Skill**

To the extent the Court intends to crosscheck the percentage sought by Class Counsel, the standard hourly rates charged by Class Counsel and their staff are reasonable and commensurate with the level of experience brought to bear on Plaintiffs' claims.[4]  In recent decisions, courts across the country have awarded fees on hourly rates similar to those charged by the attorneys and their support staff for the Class here.  The rate for attorney time ranges from $250 to $450. *Time Report,* Exhibit A.  These amounts are certainly within the ranges of billing rates found reasonable by other courts.  For example, in a recent individual case filed in the Eastern District of Virginia, Richmond Division, the Court determined Mr. Bennett's hourly rate to properly be $450.  *Reynolds v. Reliable Transmissions, Inc*., Civil No. 3:09cv238 (E.D. Va. 2010)(J. Dohnal);  *See, e.g.*, *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 325 (W.D. Tex. 2007) (finding as reasonable the following hourly rates:  $550 and $500 per hour for senior and lead counsel; $475 and $350 per hour for other counsel and associate attorneys; between $200 and $130 for legal assistants, paralegals, investigators and non-secretarial support staff); *Love v. Mail on Sunday*, No. 05-7798, 2007 WL 2709975, at *8 (C.D. Cal. Sept. 7, 2007) (approving hourly rates of between $305 and $690 for attorneys and $220 to $245 for paralegals because these rates were typical of rates charged by other "highly regarded Southern California law firms for similar work

---

[4]  Class counsel have involved multiple attorneys and paralegals at various stages of this litigation in their attempt to push more administrative work to associates and support staff. However, even doing so, there was simply too much work for the small number of admitted attorneys to perform. Accordingly, a modest amount of time is billed within the cross-check. Some is not.  For example, Class counsel has not included time incurred by Jason Krumbein, who provided Richmond assistance for some filings.  They have not billed time incurred by Mr. Erausquin's paralegal or Newport News attorneys Robin Abbott and Gary Abbott, as none of it was maintained by timesheets. Each of the law firms involved has a modest number of attorneys employed.  The case required significant document review, witness preparation, fact research, cross-country travel and motions practice.  While the Parties have now settled their differences and Class Counsel does not intend to offer an opinion as to defense strategy in the case, it is clear from Mag. J. Urbanski's Report and Recommendation that the Defendant has incurred somewhere on the order of 3 times more attorney hours in defending this case.

by attorneys of comparable experience"); *Ingram v. City of San Bernardino*, No. EDCV 05-925-VAP (SGLx), 2007 WL 5030225, at *7 (C.D. Cal. Aug. 27, 2007) ("Considering the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation, the Court finds a reasonable hourly rate charged by Plaintiffs' counsel is $500 per hour"); *In re Priceline.com, Inc. Sec. Litig.*, No. 3:00-CV-1884(AVC), 2007 WL 2115592, at *5 (D. Conn. July 20, 2007) (crosschecking lodestar against 30% fee award and approving hourly rates of between $50 and $770 per hour); *Comite De Jornaleros De Redondo Beach v. City of Redondo Beach*, No. 04-9396, 2006 WL 4081215, *3 (C.D. Cal. Dec. 12, 2006) (finding that $600 was a reasonable hourly rate in 2006 for a partner who graduated from law school in 1991).

Based on the foregoing authority and the quality and experience of Class Counsel and their staff, Class Counsel's hourly rates are reasonable and reliable *for cross-check purposes only*.  Class counsel is cognizant of the fact that their hourly rates are high for this District.  They considered the propriety of stating a reduced rate for the present motion, but concluded that it would be improper to do so.  The rates stated are the actual rates charged in individual cases and should be made known to the Court.  However, Class Counsel recognize that they are not seeking approval of these rates or the lodestar generally or independent of a common fund calculation.  Instead, the only purpose for the presentation of time is to measure whether or not sufficient work was performed in the case to cross-check a common fund recovery.  Even if these hourly rates were discounted, the multiplier to cross-check a 19.7% fee would still be overwhelmingly modest relative to other approved settlements.

**E.    Class Counsel's Costs and Expenses were Reasonable and Necessary, and Should be Reimbursed.**

In addition to the fees earned in this case, Class Counsel and Plaintiffs also accumulated reasonable and necessary expenses. Class counsel spent a total of $14,188.60 in prosecuting this litigation, the majority of which constituted fees for private mediation, deposition transcripts and travel. Mr. Domonoske has personally paid $12,360.22 out of his own pocket to fund the expenses of this litigation.  Mr. Rivera has paid $350.00 to date, as well.

Additionally, all costs and expenses incurred on behalf of the Classes are of the type typically charged to clients and are therefore generally reimbursable in class action cases.  *See DeHoyos*, 240 F.R.D. at 334 (W.D. Tex. 2007) ("The appropriate analysis to apply in determining which expenses are compensable in a class action case is whether such costs are of the variety typically billed by attorneys to clients."); *see also Tex. State Teachers Ass'n v. San Antonio Indep. Sch. Dist.*, 584 F.Supp. 61, 66 (W.D. Tex. 1983) (awarding "all reasonable expenses incurred in case preparation [and] during the course of litigation"); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 160 (E.D. Pa. 2000) (awarding, from the settlement fund, expenses including the costs of giving notice to class members).  Here, it is noteworthy that the requested award of costs and expenses will not reduce the recovery to the Class beyond the total amount sought as 19.7% of the common benefit or 25% of the $ 9.4 million amount.  Costs are included and not over and above this recovery.  The Court should, therefore, award Class Counsel's incurred costs and expenses as requested herein.  Plaintiffs further move that the Court award reimbursement of the expenses incurred individually by Mr. Domonoske in the amount of $12,360.22, and by Mr. Rivera in the amount of $350.00.

## III.    THE INCENTIVE AWARDS REQUESTED ARE REASONABLE AND PROPER.

The Court should also approve the modest incentive or service awards for the named Plaintiffs.  The Settlement will provide each Plaintiff $5,000.00 for their service.   Both

Domonoske and Rivera have endured the process of Federal litigation since 2008.   Each has been required to actively participate in their cases, provide documents and other discovery and, in Domonoske's case, submitted to a comprehensive deposition which (unsuccessfully) tested and challenged his adequacy. Plaintiff Domonoske has self-funded most of his major costs in the case incurred in pre-settlement litigation.[5]

Courts routinely award service or incentive awards to named plaintiffs in class actions. In most instances, that award is in the range of the $5000.00 in this case.   *See e.g. Staton v. Boing Co*., 327 F.3d 938, 976-77 (9th Cir. 2003); *In re Bancorp Litig*., 291 F.3d 1035, 1038 (8th Cir. 2002); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).   Courts routinely award service or incentive awards to named plaintiffs in class actions, including awards ranging from $1,000 to $10,000.   See Declaration of Ret. Magistrate Edward Infante, ¶ 36, Exhibit F. In fact, in each of the FCRA class settlements approved in Virginia, a comparable incentive award has been awarded.  *Williams, et als. v. Lexis Nexis, et als*. Civil No. 3:06cv241 (E.D. VA), *Beverly v. Wal-Mart Stores*, Inc., Civil No. 3:07cv469 (E.D. Va), *Linares v. First Equity Card*, Civil No. 3:05cv103 (E.D. of VA), *Wilder v. Triad Financial Corporation*, Civil No. 3:03CV863.   These incentive *awards* are fairly typical in class action cases. *See* William B. Rubenstein et al., *Newberg on Class Actions* § 11:38 (4th ed. 2008); Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 U.C.L.A. L. Rev. 1303 (2006) (finding a large percentage of settled class actions between 1993 and 2002 included an incentive award to class representatives). *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000).

---

[5] As both Domonoske and Class Counsel have already confirmed, there never has been nor will be any agreement, expectation or intention that Domonoske would benefit financially from any of this litigation beyond the incentive award requested in the settlement.

The requested incentive awards fall within the broad range of reasonable awards, with substantial precedent supporting them both within and outside the Commonwealth of Virginia, and they should be approved.

## IV CONCLUSION

Accordingly, for the reasons stated herein, Plaintiffs and Class counsel ask the Court to approve heir Rule 54 request for attorneys fees, costs and incentive awards.

Respectfully Submitted

THOMAS DOMONOSKE
By:  Counsel

s/ Leonard A. Bennett
Leonard A. Bennett (VSB # 37523)
Consumer Litigation Associates, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
Telephone:                  (757) 930-3660
Facsimile:                   (757) 930-3662
lenbennett@cox.net

s/ by consent Ian B. Lyngklip
Ian B. Lyngklip P47173
Attorney For Thomas Domonoske
24500 Northwestern Highway, Ste. 206
Southfield, Ian B. Lyngklip 48075
Telephone:                  (248) 208-8864
Facsimile:                   (248)208-9073
IanLyngklip@Att.Net

s/ by consent Timothy Earl Cupp
Timothy Earl Cupp (VSB #23017)
Cupp & Cupp, P.C.
Attorney For Thomas Domonoske
PO Box 589
Harrisonburg, VA 22801
Telephone:                  (540) 432-9988
Facsimile:                   (540) 432-9557
cupplaw@comcast.net

s/ by consent, Matthew J. Erausquin
Matthew J. Erausquin (VSB # 65434)
Consumer Litigation Associates, P.C.
1800 Diagonal Road, Suite 600
Alexandria, Virginia  22314
Telephone:                  (703) 273-7770
Facsimile:                   (888) 892-3512

matt@clalegal.com

## Certificate of Service

I hereby certify that on February 3, 2011, I electronically filed the foregoing Memorandum and attached Exhibits with the Clerk of the Court and served this document on the following parties:

Party

                                           Manner Served

John Trocki                                 Electronically via the CM/ECF System
Morrison & Foerster LLP
Attorney For Bank of America, N.A.
1650 Tysons Blvd., Suite 300
Maclean, VA  22102
Phone:  703-760-7720
Email: jtrocki@mofo.com

Michael Agoglia                            Electronically via the CM/ECF System
Morrison & Foerster LLP
Attorney For Bank of America, N.A.
425 Market Street
San Francisco, CA  94105-2482
Phone:  425-268-7000
Email: magoglia@mofo.com

Respectfully Submitted,

 s/ Leonard A. Bennett
Leonard A. Bennett (VSB # 37523)
Consumer Litigation Associates, P.C.
12515 Warwick Boulevard, Suite 100
Newport News, Virginia 23606
Telephone:     (757) 930-3660
Facsimile:      (757) 930-3662
lenbennett@cox.net

Dated:  February 3, 2011