UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| THOMAS D. DOMONOSKE, individually and on behalf of all those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., a national banking association,<br><br>Defendant. | Civil Action No.<br>5:09-cv-00066 |
| VICTOR RIVERA, individually and on behalf of all those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., a national banking association,<br><br>Defendant. | Civil Action No.<br>5:09-cv-00080 |

**Declaration of Stuart Rossman**

1. I am a senior attorney and Director of Litigation at the National Consumer Law Center in Boston, Massachusetts.

2. I have been admitted to practice before the Massachusetts Supreme Judicial Court since 1978, and the United States District Court for the District of Massachusetts and the First Circuit Court of Appeals since 1979.

3. I am a graduate of the Harvard Law School (J.D., *cum laude*, 1978) and the University of Michigan (B.A., *magna cum laude*, 1975).

4. From 1978 to 1991 I was first an associate, and then a partner, in the litigation department at the Boston law firm of Gaston & Snow. My practice consisted entirely of civil trial cases, including, but not limited to, litigation on behalf of consumers injured by unfair and deceptive business practices.

5. From 1991 to 1999 I served as an Assistant Attorney General in the Massachusetts' Attorney General's Office. From 1991 to 1995 I was Chief of the Trial Division, representing government agencies in a wide variety of civil litigation cases, primarily in defensive, but also in affirmative, matters. The nature of the cases I supervised or tried included a full spectrum of tort and contract claims brought against the Commonwealth. The practice also included representation of government agencies in employment disputes, environmental and civil rights violation claims.

6. From 1995 to 1999 I was Chief of the Business and Labor Protection Bureau. The newly created Bureau focused on combating white-collar economic fraud through criminal and civil enforcement. It consisted of the Insurance Fraud Division, the Unemployment Fraud Division, the Medicaid Fraud Control Unit and the Fair Labor and Business Practices Division.

7. Since 1993 I have been a member of the adjunct faculty at the Northeastern University School of Law teaching annual courses in Civil Trial Advocacy. During the Fall, 2010 term at Northeastern University School of Law I have been the Givelber Distinguished Visiting Lecturer in Public Interest Law teaching a seminar on Predatory Lending litigation. In 2003 I co-taught a Consumer Law Class at the Suffolk University School of Law. I also have lectured frequently and/or chaired litigation oriented educational programs for PLI, the American Association for Justice, the National Association of Consumer Advocates, the National Legal Aid and Defenders Association, MCLE, the Massachusetts Bar Association and the Boston Bar Association.

8. On July 1, 1999, I became the Director of Litigation at the National Consumer Law Center where I am responsible for coordinating and litigating cases on behalf of income and/or age qualified individuals, primarily in the areas of consumer financing, utilities regulation and affordable housing. In that capacity, I have been qualified to file appearances, *pro hac vice*, on behalf of consumers in class actions filed in over 30 cases, including matters formerly or currently pending in the United States District Courts for the Southern District of New York, New Jersey, Eastern District of Pennsylvania, Puerto Rico, Georgia, Central District of Tennessee, Northern District of Illinois, Kansas, the Central and Northern Districts of California and the Western District of Washington. In addition, I have been qualified to file appearances, *pro hac vice*, on behalf of consumers in class actions filed in the state courts of California, Ohio, Rhode Island, Washington and Wisconsin. Finally, I have participated in numerous consumer class actions filed in the United

        States District Court for Massachusetts and the courts of the Commonwealth of Massachusetts.

9.    While at the National Consumer Law Center I have been lead or co-counsel in over 60 consumer class action cases, including, but not limited to, Cason v. Nissan Motor Acceptance Corp., C.A. No. 3-98-0223, U.S. D. Ct. Middle District of Tennessee; Coleman v. General Motors Acceptance Corp., C.A. No. 3-98-0211, U.S. D. Ct. Middle District of Tennessee; Morkavage v. Morgan Stanley Dean Witter, C.A. 99-40114, U.S. D. Ct. District of Massachusetts; Follansbee v. Discover Financial Services, C.A. N. 99-C-3827, U.S. D. Ct. Northern District of Illinois; and Chilson v. Associates National Bank, C.A. 2000-0776, Massachusetts (Worcester County) Superior Court; Samuel v. EquiCredit, C.A. No. 00-6196, U.S. D. Ct. Eastern District of Pennsylvania; Sandoval v. Washington Mutual, C.A. No. 01-2-06488-1, Superior Court of the State of Washington ; Baltimore v. Toyota Motor Credit Corp., C.A. No CV-01-05564 NM, U.S. D. Ct. Central District of California; Jones v. Ford Motor Credit Co., Case No. 00-Civ-8330, U.S. D. Ct. Southern District of New York; Smith v. Chrysler Financial Company, Civil Action No. 00-6003, U.S. D. Ct. of New Jersey; In Re Washington Mutual Overdraft Protection Litigation, Case No. 03-2566 ABC, U.S. D. Ct. Central District of California; Hood v. Santa Barbara Bank & Trust, Case No. 1156354, Superior Court of the State of California (Santa Barbara County); Zipperer v. Supportkids, Inc., Case No. 02 CV 233, State of Wisconsin Circuit Court (Manitowoc County); Pettway v. Harmon Law Offices, P.C., Case No. 03-10932-RCL, U.S. D. Ct . District of Massachusetts; Osborne v. Bank of America, Case No. 3-02-0364, U.S. D. Ct. Middle District of Tennessee; Russell v. Bank One, Case No. 3-02-0365, U.S. D. Ct. Middle District of Tennessee; Logan v. Firstar, Case No. 3-02-0681, U.S. D. Ct. Middle District of Tennessee; Amos v. Advanced Funding, Inc, Civil Action No. 1-04-CV-2911, U.S. D. Ct. Northern District of Georgia (Atlanta Division); Borlay v. Primus Automotive Financial Services, Inc., Civil No. 3:02-0382, U.S. D. Ct. Middle District of Tennessee; Willis v. American Honda Finance Corp., Case No. 3-02-0490, U.S. D. Ct. Middle District of Tennessee; Henry v. Sturctured Investments Co., Inc., Case No. 05CC00167, Superior Court of the State of California (Orange County); Duff v. Washington Mutual Bank, Case No. 2:04-cv-2309 JLR, U.S. D. Ct. Western District of Washington at Seattle; White, et al. v. Experian Information Solutions, Inc., et al., Case No. SA CV05-2070-DOC, U.S. D. Ct. Central District of California; Puello v. Citifinancial/Citigroup,, Case No. 08-10417, U.S. D. Ct. District of Massachusetts; Barrett v. Option One/ H& R Block Bank, Case No. 08-10157, U.S. D. Ct. District of Massachusetts; Faber v. Metropolitan Life Insurance Company, Civ. Act. No.: 08 Civ. 10588, U.S. D. Ct. Southern District of New York; Rodriguez v. Chase Bank USA, N.A., Case No. 1:09-CV-10614, U.S. D. Ct. District of Massachusetts.

10. The National Consumer Law Center ("NCLC") has been referred to as the "leading non-profit low-income consumer advocacy organization in the country. Memorandum and Order, January 27, 1999, Mazola, et al v. The May Department Stores Company, United States District Court for the District of Massachusetts, 97-CV-10872-NG (J. Gertner). NCLC has been representing low-income consumers before government agencies, Congress and state legislatures since 1969. It has appeared in the United States Supreme Court and federal and state courts and has successfully presented many important cases affecting consumer borrowers. It provides consultation and assistance to legal services, private and government attorneys in all fifty states. NCLC publishes a nationally acclaimed series of manuals on all major aspects of consumer credit and sales. It also conducts training sessions nationally on the rights of consumer borrowers for attorneys, paralegals and other counselors. NCLC works closely with lawyers representing low-income consumers, and with federal and state officials, labor unions, and community and civil rights organizations to promote justice for consumers. NCLC maintains offices in Boston, Massachusetts and Washington, D.C.

11. The Center's staff of 44 permanent employees includes 20 attorneys who possess over 200 cumulative years of specialized consumer law expertise, and one energy/utilities advocate. In addition, a changing mix of special projects attorneys, consultants, fellows, and temporary hires normally supplements the regular staff. NCLC is governed by a volunteer national board of directors that includes a past president of the American Bar Association, a former Arizona Solicitor General, as well as bar association representatives and clients from low-income communities.

12. As Director of Litigation at the National Consumer Law Center I have coordinated the National Consumer Law Center's annual Consumer Class Action Symposium since its first presentation in Baltimore, MD, in October, 2001. I am the co-editor of the 7th Edition of the NCLC Consumer Class Actions manual ("Class Action Manual").

13. In my capacity as Litigation Director of the National Consumer Law Center, I have co-counseled with and advised attorneys on class action cases in Massachusetts and around the country and I am well acquainted with the resources, time and money required to successfully pursue class action claims.

14. Through my experiences as a private law firm attorney, government counsel, prosecutor and public interest lawyer practicing for over 30 years, I know the contours of this practice area and believe I am capable of opining on the merits of potential fee claims by successful attorneys in consumer class action cases brought throughout the country.

15. In anticipation of preparing this declaration, I have reviewed the Amended Settlement Agreement ("Settlement Agreement") submitted in this action by the parties on September 9, 2010 [Docket Entry 105-1] and preliminarily approved by the Court on November 19, 2010 [Docket Entry 109].

16. Specifically, I was requested to review Section 8.1 of the Settlement Agreement, which governs the determination of attorneys fees to be awarded to plaintiffs' counsel in the case pursuant to a percentage of common fund approach, in order to opine as to whether the proposed percentage of recovery award is reasonable and within the normal range of recoveries in comparable consumer class action settlements. Section 8.1 of the Settlement Agreement provides:

   **8.1 Attorneys' Fees and Expenses.** Class Counsel agree to request approval of attorneys' fees in an amount not to exceed 25% of $9,400,000 of the Common Fund (approximately 23% of the Common Fund). In addition, Class Counsel and the Class Representatives will also request Court approval of their litigation costs and expenses. Bank of America will not oppose any such request, and will pay any fees approved by the Court in an amount that does not exceed 25% of $9,400,000 of the Common Fund, and any costs and expenses approved by the Court, and will do so out of the proceeds of the Common Fund within twenty-one days after the Effective Date.

17. Section 18.2.4.1 of the NCLC Consumer Class Actions manual reviews the prevailing law regarding the establishment of the appropriate percentage to apply to a percentage of common fund approach to determine a plaintiff's counsel's award of attorneys' fees in a consumer class action case. The analysis concludes that the usual percentage used is 20% to 30%, with 40% to 50% being the upper limit.

18. As a member of the National Association of Consumer Advocates, I adhere to the principles set forth in the Standards and Guidelines for Litigating and Settling Consumer Class Actions, Second Edition ("Class Action Guidelines"), 255 F.R.D 215 (2006). The Class Action Guidelines are intended to advance the fairness and efficacy of class actions in order to ensure the maximum protection of consumer interests and to encourage the most ethical consumer class action practices. They have been cited in published decisions on a number of occasions. Many of the Guidelines have been embraced and adopted by courts and their principles are reflected in the 2004 changes to the Federal Rule of Civil Procedure Rule 23.

19. The Class Action Guidelines provide, in Guideline 8, para. C(2):

   For the vast majority of common fund cases, courts and counsel should examine the reasonableness of the fees requested by the percentage benchmarks that have been recognized in similar cases. *See, e.g., Camden I*

*Condominium Association v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) (percentage method required in common fund cases); *Swedish Hospital Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993) (same). While many circuits leave it to the trial court to select between the percentage and the lodestar/multiplier methods—and class counsel must, of course, comply with the court's decision—most fee requests in common fund cases should be presented in percentage of the fund terms, absent direction otherwise from the court. Courts should ordinarily entertain fee requests on this basis in common fund cases, unless specific factors (such as significant injunctive or other non-monetary relief, other difficulties in assessing the true monetary value of class relief, etc.) justify the use of lodestar/multiplier analysis rather than percentage analysis in the particular case.

**In the absence of special circumstances, the percentage award should generally fall within (or close to) the benchmark range of between 20% and 30% of the fund value.** *See, e.g.*, *Vizcaino v Microsoft*, 290 F.3d 1043 (9th Cir. 2000), *cert. denied sub nom.*, *Vizcaino v. Waite*, 154 L. Ed. 2d 425 (2002) (1996–2001 survey of common funds valued at $50–$200 million; fees of 25%–40% awarded in half of the 34 cases examined); *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) (20%–30% viewed as the "benchmark"); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 308 (3d Cir. 2005) (noting studies showing fee awards over 25% in large recovery cases); *In re Washington Public Power Supply System Securities Litigation*, 19 F.3d 1291 (9th Cir. 1994).

Courts should limit the use of a "lodestar crosscheck" to unusually large cases, in which the monetary relief, however valued or estimated, exceeds $50 million, where reasonable fees may constitute a percentage smaller than the benchmark. Such cross-checks in typical cases simply add another level of analysis, and may even undermine the purposes of the percentage-of-the-fund approach. Where injunctive or other non-monetary relief is obtained, or where the common fund is difficult to value or its value depends upon future contingencies (such as the redemption of coupons), the lodestar/multiplier approach may properly supplant the percentage-of-the-fund benchmarks. Provided the class receives real value and is receiving benefits commensurate with the fees to be awarded to class counsel, it is not per se unreasonable for counsel to set aside a monetary fund from which attorney fees will be paid even though the class may be receiving primarily equitable benefits. But counsel should be aware that "the timing of fee negotiations" in such cases may be considered as a factor by the courts in the "review of the adequacy of the class' representation." *General Motors*, 55 F.3d at 803–04. And the settlement itself should not depend on the court's approval of the amount of fees proposed by the parties. *Staton, supra.*

(emphasis added)

20. I note, for the purposes of my analysis, that the Settlement Agreement provides that 100% of the Common Fund, after expenses, costs and legal fees are deducted, either is to be distributed to class members who file claims or, if after distribution to the class members who filed claims there are settlement checks that are not cashed in a timely fashion, paid as a cy pres award to the Center for Responsible Lending. There is no right of reverter by which any of the Common Fund moneys can or will be returned to the Bank of America.

21. Based upon my review of the terms of the Settlement Agreement, my experience as a consumer class action attorney, the research provided by the Class Action Manual and the principles established by the Class Action Guidelines, it is my opinion that the proposed percentage of recovery award set forth in Section 8.1 of the Settlement Agreement is professionally reasonable under the circumstances and within the normal range of recoveries awarded in comparable consumer class action settlements.

22. I have not been paid to submit this affidavit nor received or been promised any other form of compensation in consideration for its submission.

Signed under the pains and penalties of perjury this 1st day of February 2011.

/s/Stuart T. Rossman
Stuart T. Rossman B.B.O. #430640
National Consumer Law Center
7 Winthrop Square 4th Floor
Boston, MA 02110
(617) 542-8010