CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

FEB 0 8 2011

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| THOMAS D. DOMONOSKE, Individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No.: 5:08-cv-00066 |
| vs. | ) ) | |
| BANK OF AMERICA, N.A., a national banking Association, | ) ) ) | |
| Defendant. | ) ) ) ) | |
| VICTOR RIVERA, Individually and on behalf of others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No.: 5:09-cv-00080 |
| vs. | ) ) | |
| BANK OF AMERICA, N.A., | ) ) | |
| Defendant. | ) ) ) | |

## OBJECTIONS OF JAMES M. VALLEE AND
## NOTICE OF INTENT TO APPEAR

James M. Vallee, Objector, files these objections to the proposed settlement and

states his intent to appear at the fairness hearing on March 31, 2011.

### I.    OBJECTOR'S IDENTITY

Objector Jams M. Vallee is a member of the Settlement Class.  Objector's current

address and telephone number are 603 N. Highway 101, Suite G, Solana Beach, CA

92075, (858) 755-6477.

This Objector objects to the proposed settlement in *Domonoske v. Bank of America, N.A.*, Case No. 5:08 - cv - 00066 for the reasons further delineated below.

## II.   THE COURT MUST ACT AS THE FIDUCIARY ON BEHALF OF THE CLASS.

"Because of the danger of counsel's compromising a suit for an inadequate amount for the sake of insuring a fee, the court is obliged to ascertain that the settlement was reached as a result of good-faith bargaining at arm's length." *In re Montgomery Co. Real Estate Antitrust Litig.*, 83 F.R.D. 301, 315 (D.Md.1979) (citing *Percodani v. Riker-Maxson Corp.*, 50 F.R.D. 473, 477 (S.D .N.Y.1970)). Factors to be considered in the fairness calculus include: (1) the posture of the case at the time settlement was proposed; (2) the extent of the discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in class action litigation. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir.1991).

> **"Active judicial involvement in measuring fee awards is singularly important to the proper operation of the class-action process. Continued reliance on case law development of fee-award measures does not diminish the court's responsibility. In a class action, the district court must ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid. Even in the absence of objections, the court bears this responsibility."**
> *Committee Notes to Rule 23(h), 2003.*

The court is required to conduct a "thorough judicial review" of class counsel's request for attorney's fees. *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 819 (3d Cir.1995). The party requesting fees must demonstrate the reasonableness of its request and must submit evidence that supports its request. See *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

2

### III.    THE REQUESTED FEE IS UNREASONABLE.

Lead Counsel proposes that its request of 2.35 million is reasonable given a review of the case.  Counsel for Plaintiffs further inform these Objectors that they have (conservatively) billed 2,571.91 hours on this matter to date.  Plaintiffs' Memorandum in Support of Motion for Award of Attorneys' Fees, Costs, and Incentive Awards, p. 14 (hereinafter, "Motion")(Docket # 136.)  However, of these hours, only approximately 565 were billed prior to the parties moved to stay the case pending mediation.   Thus, the lions' share of Plaintiffs' attorneys' time was spent negotiating, defending, and properly structuring for the Court, a settlement of this case.  (Report and Recommendation Regarding Preliminary Approval of Class Action Settlement, Docket #89.)

### A.    This Court May Apply Either the Lodestar or the Percentage of the Fund Method to Calculate the Attorneys' Fees Request in this Case.

The Supreme Court "has recognized that a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1984) (internal citations omitted). "In common fund cases the fees paid to class counsel come directly out of the recovery of the class, as opposed to statutory fee-shifting cases where the plaintiffs' recovery and counsel's fees are distinct. In those situations, every additional dollar given to class counsel means one less dollar for the class, regardless how a total settlement package is formally structured." *In re Cedant Corp. Litig.*, 264 F.3d 201, 256 (3d Cir.2001). In calculating attorney's fees in common fund cases, courts generally have employed two different methods: (1) the lodestar method,

and (2) the percentage of recovery method. *In re Microstrategy, Inc. Sec. Litig.*, 172 F.Supp.2d 778, 786 (E.D.Va.2001).

Under the lodestar method, the court calculates the sum based on hours worked and a reasonable hourly rate, applying a multiplier to account for extenuating circumstances which warrant paying Class Counsel additional monies on top of the hourly rate already "earned."

Under the percentage of recovery method, a fee is awarded as a percentage of the common fund. Courts within the Fourth Circuit have stated that, "[t]he percentage of fund method operates similarly to a contingency fee arrangement in that the attorneys receive a percentage of the final monetary value obtained for their clients. Unlike contingency fees, however, the percentage fee award is determined ex post, at the end of the litigation, rather than by an ex ante arrangement. In making this ex post determination of a reasonable percentage, courts consider many of the same factors used to adjust the lodestar figure. *Jones v. Dominion Resources Services, Inc.* 60` F.Supp.2d 756, 758 (S.D.W.Va. 2009)(citing *In re Microstrategy*, 172 F.Supp.2d at 786.)

Although the Circuits are split on which method best to use, the Fourth Circuit has not indicated its preference for either the lodestar or percentage method approach. The Court may use its own discretion to determine the appropriate method to utilize. *Jones*, F.Supp.2d at 760. In this instance, the Court should employ the lodestar calculation to determine the appropriate amount of fees payable to Class Counsel given the result of this case. The lodestar method should be used as it will be a fairer compensation for the Class attorneys in this matter and will result in an increased, albeit still small, recovery for the Class. This Objector bases this statement on the reasoning

4

further explained in Section III(B) as "the same case-specific factors [are] used to adjust, or determine a multiplier for, a lodestar figure." *In re Microstrategy*, 172 F.Supp.2d at 786-87.

**B.     If the Court Chooses to Employ the Percentage of the Fund Method, the Percentage Requested is Grossly Inflated.**

The Fourth Circuit has not yet identified factors upon which the District Courts should rely in making the determination regarding an appropriate percentage of the fund award. Id. at 761. However, Courts within this Circuit frequently rely upon the following factors in the application of the percentage method: (1) the results obtained for the class, (2) the quality, skill, and efficiency of the attorneys involved, (3) the complexity and duration of the case, (4) the risk of nonpayment, (5) awards in similar cases, (6) objections, and (7) public policy. See *In re Cendant*, 243 F.3d at 733; *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir.2000); *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir.1974); see also *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir.1978) (adopting similar factors for consideration under the lodestar method).

A review of the above factors overlaid with the specific facts of this case indicate that the percentage to which Class Counsel is entitled should be significantly less than requested.

**a.     The Result Obtained for the Class**

This Class Action was brought to compensate the class for Bank of America's violations under the the Fair Credit Reporting Act (hereinafter, "FCRA"), 15 U.S.C. § 1681, which required Bank of America to send Class Members the credit score it obtained in connection with an application for certain mortgage loans and home equity

transactions, and related disclosures, "as soon as reasonably practicable." A negligent

violation of this law entitles Class Members to the "actual damages" that the delay

caused. A willful violation entitles Class Members to statutory damages between $100

and $1,000, plus punitive damages.

As scant discovery was conducted in this case, no efforts were made to determine

whether a negligent versus a willful violation was made by Defendants. The result

actually obtained for the Class - assuming a claim rate of 100% - $2.00 per Class

Member. Even if the claim rate is extremely low, for example 10%, the recovery will still

only be $21.00 per claim. A recovery of this amount is scarcely worth the stamp to mail

the claim form.

### b.    The Quality, Skill, and Efficiency of Class Counsel

While Class Counsel seems sufficiently familiar with actions of this type and has,

evidently, represented previous classes in similar matters (See Generally, Declaration of

of Leonard A. Bennett), the skill of Class Counsel in this matter was barely ascertainable

due to the abbreviated length of the litigation. Between filing the Complaint and moving

to stay the case pending settlement, Class Counsel expended only approximately 565

hours within seven months. The remainder of the hours were spent negotiating

settlement. (See Motion, Ex. 1.) Thus, this factor must negatively impact Class

Counsels' fee request.

### c.    The Complexity and Duration of the Case.

From a review of the docket, the litigation of this case appears only to have lasted

approximately seven months. Further, as stated previously, only 565 hours were

expended by Class Counsel in litigating this case. (Motion, Ex. 1.) Furthermore, no

dispositive motions were filed in this case. Discovery involved three depositions, one

third-party subpoena, and ten thousand pages of document production. The Complexity

of the case could not have possibly been less complex. Thus, this factor, too, should

negatively impact Class Counsel's fee award.

### d.    The Risk of Nonpayment

The risk of nonpayment, likewise, was not terribly significant in this case. Class

Counsel has litigated Class Actions under the FCRA previously. (Dec. Bennett.)

Therefore, Counsel was sufficiently familiar with the Act to know the incentive that

defendants would have to settle in this case. These were not novel questions of law, as

Plaintiffs' Counsel state in their Motion. (Motion, p. 8.) Rather, this law requires only

that Plaintiffs prove a "negligent" violation of the law in order to prove a violation. The

threshold, therefore, was not a high one to prove Defendants had committed some

manner of wrongdoing. Thus, the incentive to settle in this case, even absent significant

evidence against Defendants, was high. Defendants would have spent more in attorneys'

fees to prove that their processes did not violate this law, than to simply settle the case for

the small sum of approximately $9 million.

### e.    Awards in Similar Cases

Percentage awards from a common fund can range anywhere from 4% to 40%. *In

re Cendant Corp. PRIDES Litigation*, 243 F.3d 722, 736 (3rd Cir. 2001.) In determining

a fee award, the Court cannot rely on a rigid, formulaic approach, but must consider the

factors specific to each case. Id. In this case, the de minims, almost nonexistent, award

for the Class coupled with the short duration of the litigation and the total lack of

complexity in this case should influence this Court to err on the low end of the percentage

spectrum. Class Counsel is certainly not entitled to a recovery of 23.6% of the common fund. Awarding Class Counsel nearly one quarter of the total recovery seems unreasonable given the facts of this case.

**f.      Other Objections**

At the time of writing this objection, there are well over 30 objections already on this Court's docket regarding the proposed settlement. This is certainly a number worth considering. Very likely, the Court may expect to have more prior to the deadline.

**g.      Public Policy**

Public Policy considerations also indicate that this fee request is too high. The purpose of a class action is to rectify an individual's harm either monetarily or through injunctive relief. Class actions are intended to promote efficiency and economy by allowing courts to process and adjudicate the claims of numerous persons in one action. Class actions also level the playing field by aggregating many small claims, ensuring that individuals can still recover even where their individual injuries are too modest to warrant the expense of bringing a case, and, by the same token, ensuring that corporate wrongdoers do not profit from wrongdoing that has injured many people. However, in this case, the class action process has bestowed scarcely any benefit on the class members. Thus, this factor should also negatively impact Class Counsel's requested fee percentage.

A review of the above factors should be a warning to this Court that 23.6% of this fund is a number far in excess than to what Class Counsel should be awarded.

/ / /

C.      **The Lodestar Cross-Check Further Indicates the Unreasonableness of the Fee Request.**

Even if the percentage of recovery method is employed, a lodestar cross-check is an important means to verify the reasonableness of the fee award. *In re The Mills Corp.*, 2009 WL 5091931, at *13; Jones, 601 F.Supp.2d at 759; *In re Microstrategy*, 172 F.Supp.2d at 786-87 (explaining that courts using the percentage of recovery method reference "the same case-specific factors used to adjust, or determine a multiplier for, a lodestar figure."). Furthermore, many courts think it is, at a base level, sensible for district courts to cross-check the percentage fee award against the lodestar method. See, *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir.1998). "The lodestar cross-check is performed to 'ensure that the percentage approach does not lead to a fee that represents an extraordinary lodestar multiple.' " *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, No. Civ. A 03-4578, 2005 WL 1213926, at *15 (E.D.Pa. May 15, 2005).

Class Counsels' lodestar is presently at 2,571.91 hours.  Counsel states in their Motion that this was a "conservative" calculation. (Motion, p. 14.)  At the time of the Preliminary Settlement Conference in August, Class Counsel had only billed 1948 hours; 565 of which were the hours spent actually litigating the case. (Docket #89.)  Since then, Class Counsel have spent an additional 623.91 additional hours, all aimed at obtaining approval of the settlement (See Docket # 90, 91, 93, 94, 95, 102, 105, and 106), which was apparently fraught with difficulty.  Thus, only 21% of the attorney hours were spent in litigating this case and 79% were spent in structuring, and then defending, the settlement terms. Thus, this Objector requests that, should the Court employ the percentage of the fund method, that it utilize a lodestar cross-check to determine the

reasonableness of the request and, more importantly, critically analyze Class Counsels' allocation of hours in this matter. Based on the foregoing, the number of hours should be reduced to reflect the amount of time aimed at truly benefiting the Class.

## IV.  JOINDER IN OTHER OBJECTIONS

This Objector adopts and joins in all other well taken - bona fide objections filed by other Class Members in this case, and incorporates them by reference as if they appeared in full herein.

## V.  REQUEST FOR INCENTIVE AWARD

Based on the above, this Objector wishes to reserve the right to apply for reasonable and appropriate compensation for the valuable and crucially important services which have been provided in assisting the Court with this complex matter, preserving the adversary process needed to test the Proposed Settlement, identifying problems with the Proposed Settlement, and presenting substantial and workable solutions.

The Committee Notes to Rule 23(h) expressly states the benefit that objectors may bring to a case:

> **"In some situations, there may be a basis for making an award to other counsel whose work produced a beneficial result for the class, such as attorneys who acted for the class before certification but were not appointed class counsel, or attorneys who represented objectors to a proposed settlement under Rule 23(e) or to the fee motion of class counsel. Other situations in which fee awards are authorized by law or by agreement of the parties may exist."**
> 2003 Committee Note, Rule 23(h).

Accordingly, an incentive award is appropriate for Objector herein for his willingness to be a named party, promoting fairness, and contributing to the common welfare of the Class.

## VI.  CONCLUSION

W H E R E F O R E , This Objector respectfully requests that this Court:

A.      Upon proper hearing, sustain these Objections;

B.      Upon proper hearing, enter such Orders as are necessary and just to

adjudicate these Objections and to alleviate the inherent unfairness, inadequacies and

unreasonableness of the proposed settlement; AND

C.      Award an incentive fee to this Objector for his service as a named representative

of Class Members in this litigation.


Dated: February 7, 2011                    By: _____
                                                James M. Vallee

                                           James M. Vallee
                                           603 N. Highway 101, Suite G
                                           Solana Beach, CA 92075
                                           (858) 755-6477

1   **Domonoske v. Bank of America, N.A.**
    **Case No. 5:08-cv-000666**

2

3                          **DECLARATION OF SERVICE**
                  **STATE OF CALIFORNIA, COUNTY OF SAN DIEGO**
4

5           I, Maria V. Carapia, declare that I am over the age of eighteen (18) and I am not a party
    to this action.  On February 7, 2011, I caused to be served the following:
6

7           **Objections of James M. Vallee and Notice of Intent to Appear**

8   on the interested parties:

9                          **SEE ATTACHED SERVICE LIST**

10

11  by placing a copy in an envelope, for delivery via overnight mail, to the addressees named
    on the attached Service List on the above indicated day.

12

13          I declare under penalty of perjury under the laws of the State of California that the
    foregoing is true and correct.  Executed on February 7, 2011, at Solana Beach, California.

14

15

16                                                    Maria V. Carapia

17

18

19

20

21

22

23

24

25

26

27

28

                              DECLARATION OF SERVICE

**SERVICE LIST**

1

2

3
**COURT**
Clerk of the Court
United States District Court
4
116 N. Main Street, Room 314
Harrisonburg, VA 22802
5

6
**CLASS COUNSEL**
Ian B. Lyngklip
7
Lyngklip & Associates
Consumer Law Center
8
24500 Northwestern Hwy., Ste. 206
Southfield, MI 48075
9
Phone: (248) 208-8864
Fax: (248) 208-9073
10
Email: IanLyngklip@att.net

11

12
Leonard A. Bennett
Consumer Litigation Associates, PC
12515 Warwick Blvd., Ste. 100
13
Newport News, VA 23606
Phone: (757) 930-3660
14
Fax: (757) 930-3662
Email: lenbennett@cox.net
15

16
**DEFENSE COUNSEL**
Michael J. Agoglia
17
Morrison & Foerster, LLP
425 Market Street
18
San Francisco, CA 94105
Phone: (425) 268-7000
19
Fax:
Email: magoglia@mofo.com
20

21

22

23

24

25

26

27

28

DECLARATION OF SERVICE