CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 14 2011

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| THOMAS D. DOMONOSKE, ) | |
| ) | Civil Action No. 5:08cv00066 |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| BANK OF AMERICA, N.A., ) | |
| ) | By: Samuel G. Wilson |
| Defendant. ) | United States District Judge |

These are consolidated civil actions by Thomas Domonoske and Victor Rivera, plaintiffs, against defendant, Bank of America, N.A. ("the Bank"), seeking damages, attorney's fees and costs pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, as remedies for the Bank's alleged failure to provide them with certain credit score disclosures "as soon as reasonably practicable" as mandated by § 1681g(g) of the FCRA. The parties reached a settlement, the court preliminarily approved the class under Rule 23(b)(3), and the parties sent notice to the class members. After receiving claims, objections, and opt-outs, the parties moved for final approval of the class settlement under Federal Rule of Civil Procedure ("Rule") 23(e), and the court conducted a fairness hearing. For the following reasons, the court finds that the class received reasonable notice, approves the parties' settlement as fair, reasonable and adequate, grants class counsel $1,791,000 in attorney's fees under the percentage of the common fund method, awards $29,659.24 in total costs, and approves a $5,000 incentive award to each class representative.

I.

This settlement arises out of two consolidated class actions – one by Domonsoke, filed in the Western District of Virginia on August 8, 2008, and one by Rivera, filed in the Eastern

District of Virginia on May 28, 2008. At the parties' request, the Eastern District transferred Rivera's case to the Western District for consolidation with Domonoske's case in order to effectuate a "global settlement." The court's previous opinion, Domonoske v. Bank of America, N.A., 705 F. Supp. 2d 515 (W.D. Va. 2010), and the Magistrate Judge's report, Domonoske v. Bank of America, N.A., 2010 WL 329961 (W.D. Va. Jan. 27, 2010), fully trace the background of this case, and the court repeats here only what it finds necessary to explain its decision to approve the class settlement and award fees and costs.

The FCRA requires a mortgage lender that obtains a "consumer" applicant's credit score[1] in the process of evaluating the applicant's loan application to provide that score to the applicant "as soon as reasonably practicable[.]" 15 U.S.C. § 1681g(g). The FCRA imposes civil liability on "[a]ny person" violating duties under the Act. §§ 1681n(a); 1681o(a). In the case of a negligent violation, the consumer may recover actual damages. §1681o(a)(1). In the case of a willful violation, the consumer may recover either actual damages or statutory damages between $100 and $1,000, and "such amount of punitive damages as the court may allow." 15 U.S.C. § 1681n(a). A successful plaintiff may recover costs and reasonable attorney's fees. See 15 U.S.C. § 1681n(a)(3); 15 U.S.C. § 1681o(a)(2).

When the Bank requests a consumer's credit score for use in evaluating a loan application, its request triggers the preparation of a "credit score disclosure" to be sent to the consumer. During the time period relevant to this class action, the Bank processed home equity applications primarily through a system the parties refer to as the "ACAPS" system, and it processed mortgage loan applications and the remaining home equity application through various systems the parties refer to as the "Legacy" systems. This class action claims that the Bank

---

[1] 15 U.S.C. § 1681g(f)(2)(A) defines a credit score as "a numerical value or a categorization derived from a statistical tool or modeling system used by a person who makes or arranges a loan to predict the likelihood of certain credit behaviors, including default[.]"

2

failed to prepare and mail credit score disclosures to consumers "as soon as reasonably practicable," under the ACAPS system in place until September 12, 2008 and under the Legacy systems in place until July 11, 2009. The Bank updated these systems after this litigation began, and plaintiffs do not challenge the Bank's procedures under the updated systems. The Bank asserted that the average processing time of credit score disclosures under the replaced ACAPS and Legacy systems was between five and seven days. Even class counsel acknowledges that in nearly all cases, the class members received these disclosures within fourteen days. The named plaintiffs allege that these institutional procedures are themselves a violation of the FCRA, and that, personally, they did not receive their credit scores disclosures as soon as reasonably practicable – Domonoske claims it took over a month to receive his score and Rivera claims that he never received it.

The parties have engaged in discovery directed towards these and other core factual matters, and before consolidation, the cases proceeded on parallel tracks. Formal and informal discovery continued until March 20, 2009, in the Domonoske case, when the parties agreed to engage in mediation, and until October 1, 2009, in the Rivera case, when the parties jointly moved to transfer that case to this district. Although the discovery process lasted for several months, class counsel obtained fewer than 10,000 pages of written discovery from the Bank. (Pls.' Mem. Supp. Settlement 9.)

The parties suspended discovery and engaged in mediation before Edward A. Infante, a former Magistrate Judge of the Northern District of California. The parties made detailed presentations to Infante, who found the litigation to be unpredictable as to both liability and damages. After mediation, the parties reached a tentative settlement for $9.95 million, plus the cost of notice, and on September 30, 2009, they moved for class certification and preliminary

3

approval of their proposed settlement. This court referred the motion to a Magistrate Judge of this court for a report and recommendation. The Magistrate Judge issued a report recommending that the court grant class certification but also excise several of the proposed settlement's provisions. Following the parties' objections to the Magistrate Judge's report and recommendation, the court concluded that one of the settlement's provisions was both substantively objectionable and material to the settlement. Accordingly, the court denied preliminary approval and certification. The parties reached a new agreement without the provision the court found objectionable and submitted it to the court for preliminary approval on September 9, 2010.

The amended settlement agreement contains the following material provisions: (1) the settlement class will include two subclasses: (a) those whose loan applications were processed on the ACAPS system between August 8, 2006, and September 12, 2008, and whose credit score disclosures were triggered more than three days after receipt of the application, and (b) those whose loan applications were processed on the Legacy systems between May 28, 2006, and July 11, 2009; (2) the Bank will make a payment of $9.95 million to a common fund for the class and will cover the additional administrative costs of class notice; (3) each class member who submits a claim will receive a proportionate share of the common fund up to $100, but not less than $2; (4) class counsel will request, and the Bank will not oppose, a $5,000 class representative incentive award, to be paid out of the common fund; (5) class counsel will request, and the Bank will not oppose, an attorney's fee up to 25% of $9.4 million, or $2.35 million, to be paid out of the common fund; (6) class counsel will request payment of the costs incurred by class counsel and the class representatives; (7) upon final approval, each class member who has not opted out of the settlement, will be deemed to have released any claim against the Bank arising out of the

violations alleged in this class action; (8) if the Settlement Administrator is unable to fully distribute the common fund, the Center for Responsible Lending will be the *cy pres* recipient of the remaining funds for use in aiding Bank of America customers in foreclosure proceedings; (9) the "Effective Date" of the settlement will occur after the court has entered a final judgment in the case and either (a) thirty-five days have passed after the parties and objectors to the class action have been served with notice of the Court's judgment and no appeal has been taken nor any extension for such appeal has been granted, or (b) if an appeal is taken with respect to the Court's approval of the settlement, the appellate court has approved the Court's judgment, denied review or the appellant has otherwise exhausted all appellate remedies; and (10) within twenty business days of the "Effective Date," the Bank will establish a common fund of $9,950,000 for payment to the class, class counsel and the class representatives. The court granted the parties' motion for preliminary approval of the class and the amended settlement.[2]

The parties hired Rust Consulting, Inc. ("Rust") as the Settlement Administrator to facilitate notification to the class. The Bank identified 3,484,444 eligible transactions involving 3,025,689 class members, and Rust then sent claim forms to those class members.[3] (Rust Aff. 2, ECF No. 152, Ex. A.) The claim forms explained the nature of the action, the proposed settlement, the requested attorney's fees, and provided each class member with an individualized PIN number for each eligible transaction to be used in submitting a claim or opting out. Claim forms from 464,354 transactions were timely submitted via mail or the settlement website to

---

[2] The court also reviewed the proposed class notice and claim form submitted by the parties, and had a conference to discuss them. The court instructed the parties to revise and simplify the class notice to make it more readable, and had the parties inform the court further concerning the settlement website and the *cy pres* recipient - the Center for Responsible Lending. The parties submitted a simplified notice, and provided the court with access to the claims settlement website and information about the Center for Responsible Lending. At the court's request, the parties also submitted a revised claim form.

[3] The difference between the number of eligible transactions and the number of claim forms sent to class members is due to the fact that some class members had more than one eligible transaction.

5

Rust, representing an approximate 13% claim filing rate. (Id.) Rust also received 12,259 exclusion requests, for a 0.04% exclusion filing rate.

The parties moved for final class certification and approval of the settlement under Rule 23, and class counsel moved for approximately $2.32 million in attorney's fees, $29,659.24 in costs, and $5,000 incentive awards for both named plaintiffs.[4] The court received 59 objections to the settlement.[5] Most of the objections voiced general disagreement with the case as frivolous, and a good deal of the objections focused on the attorney's fees as being too high, although none of the arguments raised in the objections gave the court any reason to question the adequacy of the settlement. The court held a fairness hearing on all of these issues on March 31, 2011, where it questioned the parties about the claims process, the adequacy of the settlement, the named plaintiffs' incentive awards, and class counsel's requested fee award. No objectors appeared at the fairness hearing. At the court's request, the parties also submitted additional details of the settlement's common fund and costs, and the response rates of the class.

## II.

The parties moved for final approval of their settlement agreement. Under Rule 23, "a certified class may be settled . . . only with the court's approval." FED. R. CIV. P. 23(e). Where a settlement will bind class members, as the proposed settlement will here, the court must hold a hearing and determine that the settlement is fair and adequate before approving it. See id. at 23(e)(2); Scardelletti v. Debarr, 43 Fed. App'x 525, 528 (4th Cir. 2002); In re Jiffy Lube Sec. Litig. ("Jiffy Lube"), 927 F.2d 155, 158 (4th Cir. 1991) ("If the proposed settlement is intended to preclude further litigation by absent persons, due process requires that their interests be

---

[4] The Bank covered the costs of notifying the class. This amount will not be subtracted from the common fund.

[5] Some objections were sent directly to the court, while others were sent to class counsel and later filed with the court.

adequately represented."). As the Fourth Circuit has explained, the district court must engage in "a two-level analysis [in] evaluating a settlement's 'fairness' and "adequacy.'" In re The Mills Corp. Sec. Lit. ("The Mills Corp."), 265 F.R.D. 246, 254 (E.D. Va. 2009) (citing Jiffy Lube, 927 F.2d at 158–59). The court also must determine whether the class was given reasonable notice of the settlement. See The Kay Co. v. Equitable Prod. Co., 2010 U.S. Dist. LEXIS 41892, at *12–13 (S.D. W. Va. Apr. 28, 2010). The court has undertaken the required analysis, and finds that the class was given reasonable notice of the settlement and that the settlement is fair and adequate. Therefore, the court approves the settlement under Rule 23(e).

### A.

"In the context of a class action, the due process requirements of the Fifth Amendment require '[r]easonable notice combined with an opportunity to be heard and withdraw from the class.'" Id. (quoting In re Serzone Prods. Liab. Litig., 231 F.R.D. 221, 231 (S.D. W. Va. 2005). Likewise, Rule 23(c)(2)(B) requires that class members receive "the best notice practicable under the circumstances[.]" In Phillips Petroleum Co. v. Shutts, the Supreme Court held that due process is satisfied "where a fully descriptive notice is sent first-class mail to each class member, with an explanation of the right to 'opt out[.]'" 472 U.S. 797, 812 (1985).

The court is satisfied that the class received reasonable notice here. The Bank identified 3,484,444 transactions which fell within the scope of the class action. Rust Consulting created a class member list of the 3,025,689 individuals seeking credit in those transactions and mailed personal notice with an individualized claim form to each listed class member by fourth-class mail.[6] The notice fully explained the nature of the action, the proposed settlement, the requested attorney's fees, and provided class members with an opportunity to file a claim, opt-out or file an objection to the settlement. Rust facilitated the class settlement by creating a class website

---

[6] The court finds that due process was not affected by sending the direct notice via fourth-class mail.

7

(through which class members could file a claim or opt-out) and a telephone support line (in English and Spanish) to respond to questions from class members. The court finds that the notice provided here satisfies due process and the requirements of Rule 23(c)(2)(B).

### B.

In Jiffy Lube, 927 F.2d 155, the Fourth Circuit explained the factors that should guide the court in determining the fairness of a class settlement – that is, whether "the settlement was reached as a result of good-faith bargaining at arm's length, without collusion[.]" Id. at 159. These "fairness factors" are "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of [the] class action litigation." Id.; The Mills Corp., 265 F.R.D. at 254. The first factor requires the court to evaluate "how far the case has come from its inception[,]" since a settlement in an immature case might point towards collusion, while a mature case will point in the opposite direction. The Mills Corp., 265 F.R.D. at 254; Jiffy Lube, 927 F.2d at 159. In a similar vein, the second factor requires the court to determine whether the case was "well-enough developed for [the parties] to appreciate the full landscape of their case[.]" The Mills Corp., 265 F.R.D. at 254. The third and fourth factors are self-explanatory. The court has looked to all four factors and finds that the settlement is fair.

Here, as far as class actions go, discovery was not extensive at the time the parties reached a tentative settlement. But though class counsel needed a technical understanding of the Bank's credit score disclosure systems, the fact pattern and issues involved in the case otherwise are straightforward, and, from the court's perspective, did not require the kind of burdensome, expensive discovery that seems to plague so many class actions. Under the circumstances, the court finds that discovery was adequate to develop the record and apprise the parties of the

merits. The court also finds that the parties engaged in arm's length settlement negotiations with the assistance of experienced, knowledgeable, and committed class counsel.[7] See Strang v. JHM Mortg. Sec. Ltd. P'ship, 890 F. Supp. 499, 501–02 (E.D. Va. 1995) (taking class counsel's "wealth of experience and knowledge" into account). Accordingly, the court finds that the proposed settlement is fair and not the result of collusion between the parties.

### C.

The Fourth Circuit has also detailed the factors a court should consider in evaluating the adequacy of a proposed class action settlement. Jiffy Lube, 927 F.2d at 159.[8] These are:

> (1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.

Id. Essentially, the court should weigh the benefits of the settlement to the class against the strength of the defense, and the expense and uncertainty of the litigation while accounting for class objections. See The Mills Corp., 265 F.R.D. at 255–58 (applying the adequacy factors); Strang, 890 F. Supp. at 502 (same).

The court has considered the above factors and finds the settlement to be adequate. The FCRA's requirement that a lender that obtains a "consumer" applicant's credit score in the process of evaluating the applicant's loan application provide that score to the applicant "as soon

---

[7] The court appointed Leonard Anthony Bennett, Ian Bryce Lyngklip, and Timothy Earl Cupp as class counsel. The court has reviewed class counsel's qualifications and is satisfied that each attorney is experienced in consumer rights and complex federal litigation, and the court will credit their judgment in these areas of law. See, e.g., The Mills Corp., 265 F.R.D. at 255 ("[I]t is entirely warranted for this court to pay heed to [the attorney's] judgment in approving, negotiating, and entering into a . . . settlement[,]" where the attorney's are nationally recognized in the class action's area of law.)

[8] Although the determination of fairness and adequacy seem to be intertwined, based on the factors set forth by the Fourth Circuit, the fairness prong is aimed at collusion in the bargaining process, see Jiffy Lube, 927 F.2d at 159, while the adequacy prong focuses on the substantive provisions of the settlement and their impact on the class. See Clark v. Experian Info. Solutions, Inc., 2004 WL 256433, at *8 (D.S.C. Jan 14. 2004) (noting that the adequacy prong is designed to look at the substantive provisions).

as reasonably practicable" provides no bright line or marker for judging the lender's compliance. And, unlike other provisions of the FCRA that, for example, prohibit false or reckless credit disclosures, in most instances, a consumer who fails to receive timely notice of the credit score its lender has obtained would be hard-pressed to demonstrate a compensable injury, or in the absence of a provable injury, willfulness. Here, there is little doubt that the Bank had a system designed to provide the statutorily mandated notice, and the average delay does not readily support an inference that the Bank acted willfully. With these realities as a backdrop, proof of willfulness seems an onerous task with a highly uncertain outcome, and more likely than not only an occasional outlier could prove any actual damage at all, and those outliers were free to opt out of this suit in favor of their own.

Finally, that there are relatively few objections (59 out of 3,025,689 class members) and only a small percentage of class members (0.04%) opting out, supports the adequacy of the settlement. See The Mills Corp., 265 F.R.D. at 257 ("[A]n absence of objections and a small number of opt-outs weighs significantly in favor of the settlement's adequacy.") And though most of the 59 objections show a philosophical disagreement with class action litigation, a general disagreement with this litigation in particular, or dissatisfaction with class counsel's requested attorney's fees, they do not impugn the adequacy of the settlement itself.

For the above-stated reasons, the court finds the proposed settlement to be fair and adequate, overrules the objections to it,[9] and grants the parties' joint motion for approval.

---

[9] The court also finds that none of the objectors materially advanced the litigation or benefitted the class. Therefore, all requests for objectors fees are denied. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1052 (9th Cir. 2002) ("In the absence of a showing that objectors substantially enhanced the benefits to the class under the settlement, as a matter of law they were not entitled to fees[.]").

### III.

Class counsel has moved for an attorney's fee award of approximately $2.32 million.[10] Applying the appropriate factors for determining a reasonable attorney's fee under the percentage of the recovery method, the court finds that 18% of the common fund, or $1,791,000, is a reasonable attorney's fee, and awards that amount.

There are two main ways to calculate an attorney's fee – the percentage of the recovery method and the lodestar method. See Strang, 890 F. Supp. at 502 (noting both methods). "[T]he vast majority of other courts in other jurisdictions consistently apply a percentage of the fund method for calculating attorneys' fees in common fund cases." The Mills Corp., 265 F.R.D. at 260. "The percentage method better aligns the interests of class counsel and class members because it ties the attorneys' award to the overall result achieved rather than the hours expended by the attorneys." See The Kay Co. v. Equitable Prod. Co., 749 F. Supp. 2d 455, 471 (S.D. W. Va. 2010). The court agrees and uses the percentage of the fund method in calculating counsels' fee award. However, because "the percentage method has its limitations as well," McDaniel v. Cnty. of Schenectady, 595 F.3d 411, 418 (2d Cir. 2010), the court will "take advantage of the benefits of both methods[,]" The Mills Corp., 256 F.R.D. at 260, and employ a lodestar multiplier cross-check to further evaluate the class counsel's attorney's fee award. See Smith v. Krispy Kreme Doughnut Corp., 2007 WL 119157, at *3 (M.D.N.C. Jan. 10, 2007) (using a lodestar cross-check).

In applying the percentage method, courts look to the following seven factors taken from the Third Circuit and used by other district courts in this circuit:

> (1) the results obtained for the Class; (2) objections by members of the Class to the settlement terms and/or fees requested by counsel; (3) the quality, skill, and

---

[10] Class counsel moved for $2.35 million to cover both their attorney's fees and their costs; the court reviews these requests separately.

11

efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) public policy; and (7) awards in similar cases.

The Mills Corp., 256 F.R.D. at 261 (citing In re Cendant Corp. PRIDES Litig., 243 F.3d 722, 733 (3d Cir. 2001). See also The Kay Co., 749 F. Supp. 2d at 471 (applying these seven factors).[11] Taking these factors into account, the court finds that an attorney's fee of 18% of the $9.95 million common fund, or $1,791,000, is appropriate.

The court has already addressed the first five factors and found that the settlement is a favorable result for the class, there were relatively few objections, class counsel are experienced consumer advocates, the litigation was neither protracted nor overly complex, and given the difficulties of proving willfulness or even negligence with actual damages, there was a substantial risk of nonpayment. With regard to public policy, the court notes the need to "properly balance[] the policy goals of encouraging counsel to pursue meritorious [litigation in the relevant legal field, consumer litigation here,] . . . while [also] protecting against excessive fees." In re Nortel Networks Corp. Sec. Litig., 539 F.3d 129, 132 (2d Cir. 2008); see also Stillmock v. Weis Mkts., Inc., 385 Fed. App'x 267, 274 (4th Cir. 2010) (noting that the

---

[11] As another district court in this circuit has noted, the factors set out in In re Cendent Corp. PRIDES Litig., 243 F.3d 722, are substantially similar to the factors set out by the Fourth Circuit for determining a reasonable attorney's fee under the lodestar method. The Mills Corp., 256 F.R.D. at 261. The factors set out by the Fourth Circuit for determining a reasonable fee under the lodestar method are:

> (1) time and labor expended; (2) novelty and difficulty of the questions raised; (3) skill required to properly perform the legal services; (4) attorney's opportunity costs in pressing the litigation; (5) customary fee for like work; (6) attorney's expectations at the outset of litigation; (7) time limitations imposed by the client or circumstances; (8) amount in controversy and results obtained; (9) experience, reputation, and ability of the attorney; (10) undesirability of the case within the legal community in which the suit arose; (11) nature and length of the professional relationship between the attorney and client; (12) fee awards in similar cases.

In re Microstrategy, Inc., 172 F. Supp. 2d 778, 786, n.23 (E.D. Va. 2001) (citing Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir. 1978)). The court notes that there is some question as to whether the factors from Barber v. Kimbrell's, Inc. also apply to the determination of attorney's fees under the percentage method. See In re MRRM, P.A., 404 F.3d 863, 867 (4th Cir. 2005) (noting that the district court had awarded attorney's fees under the percentage method "after thorough application of Barber v. Kimbrell's, Inc."). Under either set of factors, the court's determination of an appropriate attorney's fee is the same.

likelihood that the FCRA's provisions will be enforced through litigation is much higher "by way of class action" than through lawsuits filed by individual plaintiffs). The court's fee award is within the range of awards in cases of similar legal and factual complexity. See, e.g., The Mills Corp., 256 F.R.D. at 260 (granting attorney's fees in an 18% range and listing seventeen other cases with similar awards ranging from 18% to 30%); MCLAUGHLIN ON CLASS ACTIONS § 6.23 (6th Ed. 2010). ("[A]wards in the 20 to 30% range are not uncommon[.]").[12]

A lodestar cross-check confirms that 18% of $9.95 million is a reasonable fee award for class counsel. Class counsel collectively spent 2,572 hours on this case,[13] charged at rates ranging from $250 to $450. The court finds these rates, which vary based on the attorney's level of seniority and respective legal markets, and the hours expended, to be reasonable – resulting in a lodestar of $992,663.75.[14] This produces a lodestar multiplier of about 1.8, which is well within the normal range of lodestar multipliers. See In re Cendant Corp. PRIDES Lit., 243 F.3d at 742 (noting lodestar multipliers ranging from 1.35 to 2.99 in other cases); Jones, 601 F. Supp. 2d at 766 ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorney's fee."); Smith, 2007 WL 119157, at *3 (approving a lodestar cross-check multiplier of 1.6).

## IV.

The court awards $29,659.24 in total costs to class counsel and the named plaintiffs, and awards each named plaintiff a $5,000 incentive award. "Costs that are 'reasonable in nature and

---

[12] Although the court notes that an award of 18% of the common fund is at the low end of recoveries of attorney's fees and that other cases granting attorney's fees at this level often involve much larger common funds, the court finds that an award at the low end of the range of other awards is proper due to the lack of complexity and the brevity of discovery in this case.

[13] Class counsel represents that their time records do not include time billed by two attorneys and one paralegal. Without any reasonable manner of estimating this, the court disregards it for purposes of its lodestar cross-check.

[14] "When using the lodestar method only as a cross-check, the court need not apply the 'exhaustive scrutiny' normally required by that method." The Kay Co., 749 F. Supp. 2d at 469.

13

amount, may be reimbursed from the common fund.'" The Kay Co., 749 F. Supp. 2d at 471 (quoting In re Microstrategy, 172 F. Supp. 2d at 791). The court finds that the total costs requested by class counsel are reasonable. This total amount includes costs incurred by the following: Domonoske–$12,360.22; Rivera–$350.00; Domonoske Legal Team–$5,189.91; Rivera Legal Team–$8,998.69; Spanish Language Notice–$2,760.42. Likewise, "[i]ncentive awards are routinely approved in class actions to 'encourage socially beneficial litigation by compensating named plaintiffs for their expenses on travel and other incidental costs, as well as their personal time spent advancing the litigation on behalf of the class and for any personal risk they undertook.'" Helmick v. Columbia Gas Transmission, 2010 U.S. Dist. LEXIS 65808, at *8 (S.D. W. Va. 2010) (quoting Jones, 601 F. Supp. 2d at 767). At the fairness hearing, class counsel demonstrated that both class representatives were meaningfully involved in the litigation. Given the active role each played in the litigation, a $5,000 incentive award for each class representative is reasonable. See The Kay Co., 749 F. Supp. 2d at 473 (granting each class representative a $15,000 incentive award).

## V.

For the reasons stated, the court finds that the notice given to the class was reasonable, and that the parties' settlement is fair and adequate. Therefore, the court approves the parties' settlement and, under Rule 23(b)(3), certifies as a class for purposes of the settlement all natural persons who applied to the Bank for a loan subject to 15 U.S.C. § 1681g(g): (1) whose loan application was processed on the ACAPS system between August 8, 2006 and September 12, 2008, where the credit score disclosure was triggered more than three days after receipt of the application, or (2) whose loan application was processed and booked on the Legacy systems between May 28, 2006 and July 11, 2009. All remaining objections are overruled and all

requests for objectors fees are denied. The court also grants class counsel an attorney's fee award in the amount of $1,791,000, awards class counsel and the class representatives total costs of $29,659.24, and awards a $5,000 incentive award to each class representative. This action is hereby dismissed with prejudice.

**ENTER:** June 14, 2011.

_____
UNITED STATES DISTRICT JUDGE